**AUSTIN BUILDING COMPANY, Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Appellee.**

No. 16718.

Court of Civil Appeals of Texas.

Dallas.

May 6, 1966.

Rehearing Denied June 3, 1966.

Johnson, Guthrie, White & Stanfield, Robert Lee Guthrie, Dallas, for appellant.

Thompson, Coe, Cousins & Irons, Larry L. Gollaher, Dallas, for appellee.

DIXON, Chief Justice.

Appellant Austin Building Company, a Texas corporation, hereinafter called Austin, brought suit against National Union Fire Insurance Company, a Pennsylvania corporation, hereinafter called National Union, on a fire insurance policy.

Austin alleged that on March 2, 1962 it had entered into a building contract with Western Light & Telephone Company, hereinafter called Western, to construct an addition to one of Western's buildings at the latter's Arthur Mullergren Station near Great Bend, Kansas. The consideration was $1,527,000. National Union issued its builders' risk policy for total insurance coverage of $5,100,000, naming both Western and Austin as assureds.

On August 24, 1963 a fire occurred which destroyed some of Austin's tools, supplies, machinery, etc. National Union denied liability on the ground that the policy had been cancelled prior to the fire. Austin sued for $9,798.38.

In its answer to Austin's suit National Union pled that (1) prior to the fire the policy had been cancelled at the request of Western and return of unearned premium had been made to Western; (2) prior to the fire Western had occupied the building for a substantial period of time in violation of the terms of the builders' risk policy, consequently the insurance had already terminated at the time of the fire; (3) Austin failed to file a sworn proof of loss, there-fore there was no liability; (4) when cancellation was requested by Western, it was doing so not only for itself but also as agent for Austin; and (5) with respect to the insurance here at issue Western and Austin were engaged in a partnership or joint adventure, therefore the act of cancell.ction by Western was the act of Austin.

A jury returned a verdict finding that (1) the reasonable cash market value before the fire of the property destroyed was $8,-200; (2) its cash market value after the fire was $125; (3) the cost to repair or replace the property was .$9,798.38; (4) the building described in the policy was occupied before the fire and not solely for the purpose of testing machinery; (5) Western did not have actual authority or (6) apparent authority to cancel the policy in behalf of itself and Austin; and (7) a joint adventure did not exist between Austin and Western.

National Union filed a motion for judgment in its favor based on the undisputed facts, the verdict of the jury and the law applicable to the case. It is National Union's position that the jury's answer to Special Issue No. 4 requires judgment in National Union's favor. Austin filed a motion pursuant to Rule 301, Vernon's Texas Rules of Civil Procedure, asking the court to disregard the answer to Special Issue No. 4 and to render judgment for Austin on the remaining findings of the jury. The court rendered judgment that Austin recover nothing.[1]

---

1. In connection with its judgment the court made these findings:
   " * * * after full consideration, the Court is of the opinion and Solely finds as a basis for this judgment that the laws of the State of Texas are applicable to this case, that the jury's finding to Special Issue No. 4 should be disregarded for the reason that occupancy of the building described in the policy of insurance was not material and did not contribute to bring about the destruction of the property; that the filing of a sworn proof of loss was waived, that the policy sued on was supported by consideration and that the proof did not establish that plaintiff violated any anti-rebate and anti-discrimination laws of Kansas or that such laws were applicable; the Court is further of the opinion, that so finds that Western Light & Telephone Company and Austin Building Company at all times involved herein were joint venturers and that Western Light & Telephone Company had the real and/or apparent authority to cancel the policy of insurance, involved herein, for itself and the Austin Building Company before loss occurred and did so do, and the jury's findings to Special Issue No. 5, No. 6 and No. 7 should be disregarded, in that such issues were not supported by the evidence; * * *."

## FACTS

The original bid of Austin on the construction job for Western included an item of $11,750 to cover the cost of a builders' risk policy in which Austin was to be the named insured. After Austin had been informed that it had been awarded the contract a conference between Austin and Western officials was held, at which conference it was agreed that the item of $11,750 would be deleted from the final contract and Western would obtain insurance for both itself and Austin and would pay the premium for both coverages. This was done. The final contract was dated March 2, 1962.

National Union sent Austin a certificate of insurance in which Austin was erroneously referred to as Austin Builders, Inc. Austin communicated directly with National Union and by printed endorsement the names of the insureds were changed to read as follows: "Western Light & Telephone Company, Inc., Austin Building Company of Dallas, Texas, and/or Sub-contractors as their interest may appear."

The "Builders' Risk Completed Value Form", attached to the policy contains these provisions:

"2. *This policy also covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building or structure and, when not otherwise covered by insurance, builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable, all forming a part of or contained in said* building or structure, *temporary structures,* or on vehicles, or in the open; only while on the premises described or within 100 feet thereof. (Emphasis ours.)

"3. Loss Payable Clause: Loss, if any, to be adjusted only with the Insured named herein and payable to the Insured and ———————— as their respective interests may appear, subject, neverthe-

less, to all the provisions and stipulations of the policy.

"4. Occupancy Clause: It is a condition of this insurance that the premises shall not be occupied without obtaining the consent of this Company endorsed hereon; except that machinery may be set up and operated solely for the purpose of testing the same without prejudice to this policy."

Western's plant near Great Bend, Kansas covers ninety acres and includes a number of buildings. The improvements which Austin contracted to construct constituted an addition or extension to an existing building, its purpose being to house a turbine and generator for the production of electricity. The fire did not occur in the extension building.

Nearby was a temporary building, a barracks type wooden structure owned by Western, but furnished to Austin by Western as an office and warehouse for tools, machinery and supplies used and owned by Austin during the construction of the extension. It was in this building that the fire occurred on August 24, 1963.

At the time of the fire in the temporary wooden building the construction job on the extension building was 98 per cent completed. There was testimony that a quarry tile floor was yet to be laid and additional outside utilities had yet to be installed. However, a job inspection on October 7, 1963 indicated a long list of things yet to be done before completion.

The extension building had been progressively occupied by Western as construction work proceeded since a time prior to the fire. The power plant had gone into initial operation on May 15, 1963, commercial operation had begun June 15, 1963.

Austin filed its claim with National Union's authorized agent, The Meade Company, Inc. at Topeka, Kansas. It furnished a statement of its claim including an inventory and estimated values of the proper-

ty destroyed. It did not furnish The Meade Company a *sworn* proof of claim. The unsworn proof of loss was forwarded by The Meade Company to R. G. Jessup, an adjuster for General Adjustment Bureau, who was handling the loss for the insurance company. Jessup confirmed the inventory. He later obtained bids and sold some of Austin's damaged property for salvage for $125. Austin and National Union had entered into a non-waiver agreement, the purpose of which was to enable the parties to agree on the values of the property lost and damaged without waiving any rights under the policy.

By letter dated November 19, 1963 Jessup refused Austin's claim, denying liability on the ground that on instructions from Western the policy had been cancelled on July 12, 1963. This denial of liability was later confirmed by letter from National Union.

Austin was not aware that the policy of insurance had been cancelled. It had not been notified of the cancellation by either Western or National Union. Following cancellation Western had received a refund of $1,821.82 as unearned premium. It is not claimed that Austin received any of this refund. Western had then taken out permanent insurance on the frame building being used by Austin. It was paid for the loss of the building under the permanent policy.

Edward R. McKean, Western's Industrial Relations Director, wrote the letter of July 12, 1963 to National Union requesting cancellation of the policy. McKean testified that in agreeing to the cancellation he was acting solely as agent for Western. Austin had not authorized Western to cancel the policy.

Final acceptance of the job by Western took place June 30, 1964 on Austin's agreement to make some corrections. Final payment was made to Austin by Western some time in July 1964.

Herman R. Joyce, Kansas State Agent for National Union, testified that he was familar with the negotiations leading up to the issuance of the policy. He dealt primarily with Mr. McKean of Western. He had no direct contact with Austin. However, in his discussions with McKean he was told that Austin had bid less on the job with the understanding that the difference would be used to pay premium on the insurance, but he was not positive it really happened. He assumed that the cancellation was for all interests involved. He did not claim that Austin was given any notice of the cancellation.

## OPINION

In four points on appeal Austin contends that (1) under the facts of this case National Union had no legal right to assume that Western, the owner, had real or apparent authority to cancel the policy so far as Austin, the contractor, was concerned; (2) in the alternative, the evidence presented a fact question as to whether Western had such real or apparent authority, and the jury having answered Special issues Nos. 5 and 6 that Western had no such authority, it was error for the court to disregard said findings; (3) the agreement that Austin would reduce the amount of its bid by the amount of the premium it would cost Austin to purchase insurance in return for the agreement of Western to obtain insurance coverage for Austin as a matter of law does not constitute a joint adventure; and (4) in the alternative, the evidence raised a question of fact as to whether such agreement constituted a joint adventure, and the jury having found in answer to Special Issue No. 7 that no joint adventure existed, it was error for the court to disregard the said finding.

We sustain Austin's four points on appeal. The general rule is that authority to procure insurance for another does not imply authority to cancel it. No doubt Western was the agent of Austin to procure the policy, but with its procurement the agency ceased. Knowledge and notice of Western under the undisputed facts of this

case did not constitute knowledge and notice on the part of Austin. Western and National Union under the circumstances could not by mutual agreement between themselves without the consent of Austin deprive Austin of its benefits under the policy. We have found no cases exactly in point but these authorities lend support to our holding: Southwestern Fire & Casualty Co. v. Kendrick, 281 S.W.2d 344 (Tex. Civ.App., no writ hist.); Traders & General Ins. Co. v. Smith, 276 S.W.2d 347 (Tex.Civ. App., writ ref. n. r. e.); Insurance Co. of North America v. Crippen, 223 S.W.2d 297 (Tex.Civ.App., writ ref. n. r. e.); General Exchange Ins. Corp. v. Collins, 110 S.W.2d 127 (Tex.Civ.App., no writ hist.); Farrington v. Commercial Standard Ins. Co., 71 S.W.2d 336 (Tex.Civ.App., no writ hist.); Fireman's Fund Ins. Co. v. Farrington, 55 S.W.2d 1076 (Tex.Civ.App., no writ hist.); East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S.W. 572; Bobrow, et al. v. United States Casualty Co., 231 App.Div. 91, 246 N.Y.S. 363; O'Boyle v. Home Life Ins. Co., D.C., 20 F.Supp. 33; 53 A.L.R. 181; 45 C.J.S. Insurance § 455, p. 110.

■ If we be mistaken in the above holding, then we hold that the evidence raised a fact question in regard to the question of real or apparent authority of Western to cancel Austin's interest in the policy, therefore the court erred in disregarding the jury's answers to Special Issues Nos. 5 and 6.

National Union pled that Austin and Western were partners in taking out the policy. No such assertion is made on this appeal, so that question goes out of the case. However, National Union does contend that the parties were joint adventurers, "were in reality co-insureds and co-owners of the same property interest."

We do not agree with National Union. We do agree with Austin's position as stated in its third and fourth points on appeal.

■ Our Supreme Court has held that for a joint adventure to exist there must be a community of interest both as to profits and losses. Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 59 A.L.R.2d 1011. Earlier our Supreme Court held that to constitute a joint adventure the sharing must be by virtue of right as principal in the joint business, not as mere compensation for services. Friedlander v. Hillcoat, Tex., 14 S.W. 786. For other statements in regard to the nature of joint adventures see McNeil v. Barrow, 237 S.W.2d 730 (Tex.Civ.App., no writ hist.); Fischer v. McMaster, 73 S.W. 2d 554 (Tex.Civ.App., no writ hist.); McDaniel v. State Fair of Texas, 286 S.W. 513 (Tex.Civ.App., writ ref.); Emberson v. McKenna, 16 S.W. 419 (Tex.Civ.App.); 33 Tex.Jur.2d 287.

■ Applying the principles enunciated by the above authorities we think it is plain that Western and Austin were not joint adventurers. If Austin made a profit out of the construction job it belonged to Austin. If a loss was incurred it had to be borne by Austin. Western does not claim that it would have shared the profits and losses under the contract which was awarded to Austin as the successful bidder.

The same thing may be said if we confine our consideration to the insurance contract itself. The fire loss for which Austin asserts its claim was for the loss of personal property only: the tools, machinery, materials in the temporary building. Western had no community interest with Austin in said personal property or the loss thereof. And Austin had no interest in Western's insurance claim for the loss of the temporary building. Austin paid for its own insurance coverage by reducing the amount of its bid on the main contract. There is no claim that by doing so it intended to incur liability for Western's share of the insurance premium, or that Western had any interest in Austin's tools, machinery, etc. Mr. Joyce, Kansas State Agent for National Union, admitted that he was familiar with the negotiations leading up to the issuance of the policy; and that he had been told that Austin had bid less on the job with the

understanding that the difference would be used to pay premium on the insurance. It is of interest to note that Holmes Meade of The Meade Agency, Inc., National Union's local agent through whom the insurance was placed, was also a member of the Board of Directors of Western.

■ There is still another sufficient reason why we must hold that the court erred in disregarding the jury's answers to Special Issues Nos. 5, 6 and 7. Neither party filed a motion asking the court to disregard said answers. In the absence of such motion and notice thereof to the other party the court lacked authority to disregard said findings of the jury and to enter judgment contrary to such findings. Insurors Indemnity & Ins. Co. v. Associated Indemnity Corp., 139 Tex. 286, 287, 162 S.W.2d 666, 670; Continental Nat'l Bank, et al. v. Hall-Page Tire Co., Inc., Tex.Civ.App., 318 S.W.2d 127, 129; Missouri Pacific Railroad Co. v. Ramirez, Tex.Civ.App., 326 S.W.2d 50, 53; Wilson v. Burleson, Tex.Civ.App., 358 S.W.2d 751, 753.

■ In its first counterpoint National Union says that the trial court correctly rendered judgment for appellee since the evidence and verdict established that the policy terminated prior to the fire because of the occupancy by Western of the insured building.

We see no merit in the counterpoint. True, Western had been progressively occupying the building being constructed, that is, the addition or extension building. But the fire did not occur in that building. It occurred in the small frame temporary structure which Western furnished to Austin for the very purpose of being occupied by Austin as an office and warehouse during the progress of construction on the extension building. It is not contended that Western's gradual occupancy of the extension building while under construction had anything whatever to do with the fire which occurred in the temporary building which was occupied and was intended to be occupied by Austin during construction of the extension building. Moreover, National Union does not contend that Western had any interest in the tools, machinery, etc. for which Austin is making claim. Paragraph 2 of the "Builders' Risk Completed Value Form", hereinbefore quoted, expressly covers "builders' machinery, tools and equipment" and "temporary structures". It is not claimed that Western ever occupied the temporary building or any part of it during the construction of the extension building. And surely no one will contend that Austin's occupancy of the temporary structure terminated its builders' risk insurance on its tools, etc.

■ Article 6.14 of the Insurance Code of Texas provides that no breach or violation of any provision of any fire insurance policy shall constitute a defense to a suit for loss thereon unless such breach or violation contributed to bring about the destruction of the property. In this case National Union in effect charges Austin with violation of the occupancy provision of the policy because Western progressively occupied the extension building before construction was completed. There is no evidence whatever that occupancy of the extension contributed to the fire in the temporary building or to the destruction of Austin's personal property therein. We think Article 6.14 of the Insurance Code is applicable. The article, being a remedial statute, is to be liberally construed. Allemania Fire Ins. Co. v. Angier, Tex.Civ.App., 214 S.W. 450; 32 Tex.Jur.2d 384, Note 8. National Union's first counterpoint is overruled.

■ The gist of National Union's second counterpoint is that Austin cannot recover because it not only did not present a sworn proof of claim as provided by the policy but did not file any proof of claim at all within the sixty-day period following the fire as required by the law of the State of Kansas.

We have the greatest respect for our sister state and her laws, but the laws of Kan-

sas are not applicable in this case. Rule 184a, T.R.C.P. permits us to take notice of the laws of other states upon motion of either party and notice to the other if the party making the motion shall furnish the judge sufficient information to enable him properly to comply with the request. There was no compliance in this case with Rule 184a, T.R.C.P. Therefore, we must assume that the law of Kansas is the same as the law of Texas. Kansas City Title Ins. Co. v. Butler, 265 S.W.2d 154 (Tex.Civ.App., writ ref. n. r. e.). The Texas law permits filing of a proof of claim within ninety days. Article 5546, Vernon's Ann.Civil Statutes.

We overrule National Union's second counterpoint for the five reasons hereinafter stated.

1. The evidence shows that Austin's unsworn proof of claim was forwarded to The Meade Company, National Union's agent, on September 5, 1963. This was well within the time for filing the proof under either the sixty-day rule, which National Union says is the Kansas law, or under the ninety-day rule which is the law of Texas.

2. Austin's failure to furnish a sworn proof is not fatal to Austin's recovery. The proof of claim was referred by The Meade Company to Jessup, the adjuster. The latter not only confirmed the inventory but actually called Austin's attention to two items which had been overlooked. Later he sold some of the tools as salvage and tendered Austin the $125 received from the salvage sale. There was a substantial compliance with the policy provision as to proof of loss and at no time was there a complaint that the proof of claim was unsworn. Anchor Casualty Co. v. Bowers, Tex.CivApp., 385 S.W.2d 568, 570. The Supreme Court reversed on other grounds the decision of the Court of Civil Appeals in the above case, but expressly approved the court's opinion with reference to the sufficiency of the proof of claim. Anchor Casualty Co. v. Bowers, Tex., 393 S.W.2d 168, 170.

3. National Union, through Jessup, the adjuster, denied liability only on the ground that the policy had been cancelled before the fire. Failure to furnish sworn proof of claim was not named as a ground for denial of liability. Therefore such failure was waived. Francis v. International Travelers Ass'n, 260 S.W. 938, 946, affirmed by Supreme Court, 119 Tex. 1, 23 S.W.2d 282, 287.

4. Furthermore, we think National Union's pleading as to failure to file proof of claim was not sufficiently clear and distinct pleading, but was global in nature. This fails to meet requirements as to pleading. Rule 93(m), T.R.C.P.; Anchor Casualty Co. v. Bowers, Tex.Civ.App., 385 S.W.2d 568, 570.

5. National Union denied liability by letter dated November 19, 1963. This was within the ninety-day period allowed by Texas law for the filing of the proof. By denying liability before the expiration of said period National Union waived the filing of proof of claim. Niagara Ins. Co. v. Lee, 73 Tex. 641, 11 S.W. 1024 (S.Ct.); Employers Mutual Casualty Co. of Des Moines, Iowa v. Nelson, Tex.Civ.App., 351 S.W.2d 278 (Rev. on other grounds, 361 S.W.2d 704); 32 Tex.Jur.2d 594.

In its third counterpoint National Union asserts that the trial court correctly disregarded the jury's answers to Special Issues Nos. 5, 6 and 7 because the evidence established as a matter of law that the policy cancellation prior to the fire was effective as to Austin. Our discussion and holdings with reference to Austin's four points on appeal are applicable to this counterpoint. We therefore overrule the third counterpoint.

In two cross-points National Union says that (1) the court erred in admitting in evidence Austin's Exhibit No. 10 because it was hearsay and incompetent to establish value of the salvage; and (2)

judgment cannot be rendered for Austin on this appeal because there is no competent evidence to support the jury's answer to Special Issue No. 2.

Exhibit No. 10 is a bank order for $125 from B & B Wrecking Company in payment of property sold for salvage by Jessup, the adjuster. The jury in answering Special Issue No. 2 found that the value of the property after the fire was $125. Austin has never cashed the check. The check is the only evidence in the record offered in connection with the market value of the damaged property after the fire.

The check is hearsay evidence. No one representing B & B Wrecking Company testified by deposition or in person in court. National Union had no opportunity to cross-examine. There is no showing that B & B Wrecking Company paid market value for the property it bought. We sustain National Union's two cross-points.

The judgment of the trial court is reversed and the cause remanded to the trial court for another trial.

Reversed and remanded.