**AUSTIN BUILDING COMPANY, Petitioner,**

**v.**

**NATIONAL UNION FIRE INSURANCE
COMPANY, Respondent.**

**No. B–713.**

Supreme Court of Texas.

July 24, 1968.

Rehearing Denied Oct. 9, 1968.

Johnson, Guthrie, White & Stanfield, Robert Lee Guthrie, Dallas, for petitioner.

Thompson, Coe, Cousins & Irons, Larry L. Gollaher, Dallas, for respondent.

POPE, Justice.

Austin Building Company sued National Union Fire Insurance Company to recover the damages it sustained in a fire in Kansas. Austin says the damages were covered by a builder's risk insurance policy issued in its favor by the defendant. The trial court sustained Austin's motion for summary judgment and rendered judgment against National Union in the sum of $8,075.00 and interest. The court of civil appeals reversed the judgment of the trial court and remanded the case for trial. 422 S.W.2d 763. Austin presents two points for decision: (1) The court of civil appeals was in error in its holding that a statement of facts developed on a former trial of the case was incompetent summary judgment proof. (2) The court of civil appeals was in error in holding that there was a disputed question

of fact whether the insured property was "occupied" as that term was used in the policy. When the property under construction was occupied, the policy terminated according to National Union. National Union met the second point by its contention that the law of Kansas is controlling, the status of which presents at least a question of fact. National Union did not move for summary judgment and asks only that this court affirm the remand to the trial court to decide the fact question—the Kansas law. We affirm the judgment of the court of civil appeals upon that basis.

Austin and National Union agreed in the trial below that Austin's damages were in the amount stated. Austin, by way of establishing defendant's liability, presented its motion for summary judgment supported by the statement of facts and documentary evidence developed at a 'former trial of this same case. The parties agreed that the statement of facts was a correct record and it was so certified by the court reporter. The trial court considered those proofs in making its decision that the case presented no question of fact and that Austin was entitled to a judgment. The first trial of this case occurred in 1965. At the end of a jury trial, the trial court disregarded certain jury findings and rendered judgment that Austin take nothing. On appeal the court of civil appeals reversed the judgment of the trial court and remanded the case for another trial. 403 S.W.2d 499. This court refused National Union's application for writ of error with the notation, "no reversible error."

National Union answered Austin's motion for summary judgment and urged that it should be denied because the statement of facts and documentary evidence from the earlier trial of this case were incompetent summary judgment proofs under Rule 166–A of the Texas Rules of Civil Procedure. It further urged that it had filed a motion asking the court to take judicial notice of the law of Kansas, the place of the insurance contract, the construction, and the fire; thus presenting a new question of fact. It stated in the contest of the motion for summary judgment what it regarded to be the Kansas law.

The question raised by the first point stated above has not previously been directly presented to this court. Our decision must, of course, commence with Rule 166–A which rule relates to the summary judgment practice. The relevant portions of the rule are:

"* * * No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

██ National Union's argument is that the prior statement of facts is neither a pleading, deposition, affidavit nor admission. It says that the case after the original trial and general remand stood upon the docket as if it had never been tried and that the evidence given in the prior trial was no longer viable. Guerrero v. American-Hawaiian Steamship Co., 222 F.2d 238 (9th Cir. 1955). A number of decisions bearing upon this problem have discussed Rule 56 of the Federal Rules of Procedure, from which Texas obtained Rule 166–A. Movants for summary judgment in Federal cases have used statements of fact in prior trials and the practice has been generally approved. Fletcher v. Bryan, 175 F.2d 716 (4th Cir. 1949); Burnham Chemical Co. v. Borax Consolidated, 170 F.2d 569 (9th Cir. 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086; Whitaker v. Coleman, 115 F.2d 305 (5th Cir. 1940); Gillum v. Skelly Oil Co., 149 F.Supp. 588 (W.D.Mo.1957). Cases have also held that the one resisting a motion for summary judgment may rely upon a statement of facts from a prior trial to prove the existence of disputed facts. United States v. Dollar, 196 F.2d 551 (9th Cir. 1952); Ram-

souer v. Midland Valley R. Co., 135 F.2d 101 (8th Cir. 1943); see also 4 McDonald, Texas Civil Practice, § 17.26.4; McDonald, Summary Judgments, 30 Tex.L.Rev. 285, 302 (1951). We regard the practice illustrated by the Federal decisions to be more in keeping with the purpose and intent of Rule 166–A.

The court of civil appeals on this second appeal held, upon the authority of Richards v. Allen, 402 S.W.2d 158 (Tex.Sup.1966), that the trial court should not have considered the statement of facts as a part of the summary judgment proof. Richards v. Allen stands for the rule that witnesses should not, in a summary judgment proceeding, be called to testify. Whether the court should consider a statement of facts of the sworn testimony in a former trial was not the question in that case. We disapprove the dictum in Pollock v. Lowry, 345 S.W.2d 587 (Tex.Civ.App.1961, writ ref. n. r. e.), that such a statement of facts may not be considered in a summary judgment trial. Accord Willoughby v. Jones, 151 Tex. 435, 251 S.W.2d 508 (1952).

The court of civil appeals, however, correctly held that the judgment should be reversed and the cause remanded because there is a disputed fact issue which is still present in the case. We affirm that judgment. The main issue between the parties in this cause is whether the builder's risk policy terminated by reason of the owner's "occupancy" of the building. Whether there was such an occupancy as worked a termination of the policy requires us initially to decide whether the law of Texas applies, as argued by Austin Building, or whether the law of Kansas applies, as urged by National Union. After the first remand of this case, National Union pleaded, pursuant to Rule 184a, Texas Rules of Civil Procedure, that the law of Kansas controls the decision in this case and then pleaded that law. National Union's contest of the motion for summary judgment also asserted that the Kansas law controls. It set forth its brief of that law, and urged that the Kansas law is a question of

fact. National Union did not ask for a summary judgment, had neither points nor prayer in the court of civil appeals, and has none here which seek anything more than a remand. To pose the issue, it is necessary that we restate some factual background of this controversy. See also 403 S.W. 2d 499.

On March 2, 1962, Austin, a Texas corporation, entered into a contract with Western Light & Telephone Company for the construction of an addition to its power station near Great Bend, Kansas. The purpose of the addition was to house a turbine and generator used in the production of electricity. Austin's original bid included an item of $11,750.00 to cover the cost of a builder's risk insurance policy in which Austin was to be the named insured. By agreement, that item was deleted and Western agreed to obtain builder's risk insurance for both parties. Western agreed to pay and did pay the premium for coverage on both parties.

Western obtained the policy through Meade Company, National Union's representative in Topeka, Kansas. National Union sent Austin a certificate showing both Western and Austin were the named insureds. The relevant portions of the policy are:

"'2. This policy also covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building or structure and, when not otherwise covered by insurance, builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable, all forming a part of or contained in said building or structure, temporary structures, or on vehicles, or in the open; only while on the premises described or within 100 feet thereof.

"'* * *

"'4. Occupancy Clause: It is a condition of this insurance that the premises shall not be occupied without obtaining

the consent of this Company endorsed hereon; except that machinery may be set up and operated solely for the purpose of testing the same without prejudice to this policy.' "

On May 15, 1963, the construction was almost completed and the plant went into initial operation. By June 1, 1963, it was in full commercial operation. In fact, as soon as there was a roof on the new addition, the new unit had been put into operation, and not merely for testing purposes. However, the undisputed proofs show further that Western did not accept the new construction and did not approve the project for payment until June 30, 1964, more than a year later.

Western, in July of 1963, when the construction was almost completed, informed National Union of that fact and asked that the builder's risk policy be cancelled. It did this without advising Austin, the other named insured. In the former appeal, the court of civil appeals held that Austin's authorization to Western to procure the policy was not an authorization to Western to cancel it, and the court held further that Western and National Union could not themselves make an agreement which deprived Austin of its rights. Those are points decided on the former appeal and are not now before the court.

Near the addition to Western's plant which Austin was constructing, was located a smaller temporary building described as a barracks-type wooden structure which Western furnished Austin as an office and warehouse for tools, machinery and supplies used during the construction. On August 24, 1963, this structure and Austin's tools and equipment were destroyed by fire.

Austin's argument is that Western's occupancy of the new building did not contribute in any way to the fire in the temporary building which housed Austin's tools and equipment, and that Article 6.14[1] of the Texas Insurance Code entitles it to a recovery. Kansas apparently does not have a similar statute. Austin contends further that the law of Texas rather than the law of Kansas controls by force of Article 21.42 of the Insurance Code, which provides:

"Texas Laws Govern Policies. Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

Acts 1951, 52nd Leg., ch. 491."

Austin says that the quoted article requires only that a policy be issued to a citizen of Texas by a foreign corporation doing business in Texas, and that is what occurred.

National Union, on the other hand, maintains that the insurance contract in the present case was made in Kansas with Western, a Kansas citizen. That is where the premiums and policy were paid and delivered and the place of the property consumed by the fire. It says that the law of Kansas controls. The weight of authority supports National Union's contentions as

---

1. "Art. 6.14.  Breach by Insured.  No breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property.  Acts 1951, 52nd Leg., ch. 491."

reflected in this language from 2 Couch on Insurance p. 31:

"* * * It is sometimes provided by the statutes of a particular state that its laws shall govern a policy for which application was taken within the state, a policy payable to one of its citizens or inhabitants, a policy covering property, lives or interests within the state, a policy written by a foreign insurer licensed to do business within the state * * * regardless of where the contract is written * * *. Such a statute, however, cannot constitutionally be given extraterritorial effect so as to apply to a policy or a bond written or executed by a foreign insurer in another state, even though the insured was a citizen or resident of the state which had adopted the statute in question, and even though the foreign insurer also did other business within that state. * * *."

■ Our Texas statute, Article 21.42, was upheld as constitutional in International Brotherhood of B.M.I.S. v. Huval, 140 Tex. 21, 166 S.W.2d 107 (1942); however, the statute cannot be given extraterritorial effect. The question was resolved in Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.C. 129, 69 L.Ed. 342 (1924). That case construed Article 4950, Vernon's Tex. Civ.Stat. (1911), a predecessor of Article 21.42 of the Insurance Code. Application for insurance upon the insured was taken in Tennessee, residence of the insured. The policy was issued in Connecticut and delivered in Tennessee. Subsequently, Dunken, the insured, moved to Texas. The United States Supreme Court held that even though the original policy was converted after Dunken moved to Texas, the second policy was dependent upon the provisions of the first contract. Thus, the court concluded the second policy was con-

trolled by Tennessee law, just as the initial policy, because:

"* * * The Texas statute was incapable of being constitutionally applied to it, since the effect of such application would be to regulate business outside the state of Texas, and control contracts made by citizens of other states in disregard of their laws, under which penalties and attorneys' fees are not recoverable. * * *."

■ In the present case, we hold that Kansas law controls the interpretation of the occupancy clause under the doctrine of lex loci. The effect of a contract is to be determined by the law intended by the parties to control, and in the absence of a contrary manifestation, the presumption is that the parties contract with reference to where the contract was made. Fidelity Mutual Life Ass'n v. Harris, 94 Tex. 25, 57 S.W. 635 (1900); American National Ins. Co. v. Smith, 13 S.W.2d 720 (Tex.Civ. App.1929, writ ref.). See also, Jones v. Prudential Ins. Co., 210 S.C. 264, 42 S.E.2d 331; Annot. 137 A.L.R. 1128, 1130 (1942); 16 Am.Jur.2d, Conflicts of Laws, § 39. We hold that Kansas law is controlling because both Western and National's agent, the Meade Company, contracted in Kansas with regard to virtually every aspect of the policy. We, therefore, presume that the parties intended Kansas law to control. We do not decide what that law is, since the cause has been remanded to the trial court for that decision.

National Union filed no motion for summary judgment and throughout this appeal has asked only that the cause be remanded. We accordingly affirm the judgment of the court of civil appeals which reversed the judgment for Austin Building and remanded the cause for trial.