Affirmed and Opinion filed August 24, 2004









Affirmed and Opinion filed August 24, 2004.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00963-CV

____________

 

REDDY ICE
CORPORATION,
Appellant

 

V.

 

TRAVELERS LLOYDS
INSURANCE COMPANY AND

GULF
INSURANCE COMPANY, Appellees

 



 

On Appeal from the 295th
District Court

Harris County, Texas

Trial Court Cause No. 02-56129

 



 

O P I N I O N








This appeal concerns an insurance coverage
dispute.  At issue is whether Texas or
Louisiana law applies to a pollution exclusion clause contained in an insurance
policy issued to appellant Reddy Ice Corporation by appellee Travelers Lloyds
Insurance Company (ATravelers@).  Travelers filed this action, seeking a
declaration that, in connection with certain lawsuits filed against Reddy Ice,
Travelers owed no duty to defend or indemnify Reddy Ice under the primary
general liability insurance policy. 
Appellee Gulf Insurance Company intervened, seeking a declaration that
it owed no similar duty under the companion excess policy it issued to Reddy Ice.  The trial court granted appellees= motions for
summary judgment, finding that, because Texas law governs the insurance
contracts, no coverage is afforded under the policies.  We affirm.

Background

Several individuals sued Reddy Ice in
Louisiana for personal injuries caused when a refrigeration unit at its Baton
Rouge facility allegedly malfunctioned and leaked a significant amount of
ammonia into the atmosphere.  At the time
of the alleged leak, Reddy Ice was insured under a general commercial liability
insurance policy issued by Travelers, a commercial excess liability (umbrella)
insurance policy issued by Gulf, and a pollution legal liability select
insurance policy issued by American International Specialty Lines Insurance
Company.[1]


The Travelers policy contains a pollution
exclusion clause, which provides in pertinent part as follows:

This insurance does not apply to:

. . . 

f. 
Pollution

(1) ABodily injury@ or Aproperty damage@ arising out of the actual alleged
or threatened discharge, dispersal, seepage, migration, release or escape of
pollutants:

(a) At or from any premises, site
or location which is or was at any time owned or occupied by, or rented or
loaned to, any insured;

. . .

Pollutants means any solid, liquid,
gaseous, or thermal irritant or contaminant, including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and waste. 
Waste includes materials to be recycled, reconditioned or reclaimed.

 








The Gulf excess policy is subject to the
pollution exclusion clause contained in the Travelers policy.  The policies do not contain an express
choice-of-law provision.  The parties
agree that, if Texas law is used to interpret the pollution exclusion clause,
Travelers and Gulf have no duty to defend or indemnify Reddy Ice in the
Louisiana lawsuits.[2]  But, if the substantive law of Louisiana is
used to interpret the clause, a fact issue exists as to whether the clause will
exclude coverage for the personal injury claims.[3]  Thus, we are presented with a true conflict
of law.

Standard of
Review

A summary judgment movant must establish
its right to summary judgment on the issues presented to the trial court by
conclusively proving all elements of the movant=s claim or defense
as a matter of law.  See Tex. R.
Civ. P. 166a(c); Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex.
2000).  We review the summary‑judgment
evidence using familiar standards of review. 
See Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  When a trial
court=s order granting
summary judgment does not specify the grounds for the ruling, we must affirm
summary judgment if any of the summary‑judgment grounds are meritorious.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
determination of which state=s law applies is a
question of law for the court to decide. 
Torrington Co. v. Stutzman, 46 S.W.3d 829, 848 (Tex. 2000).
Therefore, we must review the trial court=s decision to
apply Texas law in this case de novo. See Minn. Mining & Mfg. Co. v.
Nishika Ltd., 955 S.W.2d 853, 856 (Tex. 1996). 

 

 








Analysis

In its sole issue, Reddy Ice argues the
choice-of-law principles adopted by Texas dictate that Louisiana law should be
applied to the pollution exclusion clause in the Travelers policy.  In Texas, when, as here, a contract does not
contain an express choice-of-law provision, a court must determine whether a
relevant statute directs the court to apply the laws of a particular
state.  Absent a statutory directive, a
court must then ascertain which state has the most significant relationship to
the issue presented for determination.  Maxus
Exploration Co. v. Moran Bros., Inc., 817 S.W.2d 50, 53 (Tex. 1991); Restatement (Second) of Conflicts of Laws '' 6, 8 (1971).  Reddy Ice contends that no statutory
directive applies to the Travelers policy and that the most significant
relationship test points to the application of Louisiana law.  Travelers and Gulf argue, however, that
Article 21.42 of the Insurance Code requires the application of Texas law to
this dispute.  

Article 21.42

Article 21.42 provides that

[a]ny contract of insurance payable
to any citizen or inhabitant of this State by any insurance company or
corporation doing business within this State shall be held to be a contract made
and entered into under and by virtue of the laws of this State relating to
insurance, and governed thereby, notwithstanding such policy of contract of
insurance may provide that the contract was executed and the premiums and
policy (in case it becomes a demand) should be payable without this State, or
at the home office of the company or corporation issuing the same.

 








Tex. Ins. Code Ann. art. 21.42
(Vernon 1981).  The provision applies to
an insurance contract when: (1) the insurance proceeds are payable to a Texas
citizen or inhabitant; (2) the policy is issued by an insurer doing business in
Texas; and (3) the policy is issued in the course of the insurer=s business in
Texas.  Hefner v. Republic Indem. Co.
of Am., 773 F. Supp. 11, 13 (S.D. Tex. 1991); see also Am. Home
Assur. Co. v. Safway Steel Prods. Co., 743 S.W.2d 693, 697 (Tex. App.CAustin 1987, writ denied).  Article 21.42 is to be interpreted narrowly
to avoid giving Aextraterritorial effect@ to its
terms.  See Aetna Life Ins. Co. v.
Dunken, 266 U.S. 389, 399 (1924); Austin Bldg. Co. v. Nat=l Union Fire Ins.
Co.,
432 S.W.2d 697, 701 (Tex. 1968).  

The parties do not dispute that Travelers
and Gulf were doing business in Texas when they issued the relevant policies
and that the policies were issued in the course of their business in
Texas.  However, Reddy Ice is a Nevada
corporation with its principal place of business in Texas.[4]  Reddy Ice acknowledges its principal place of
business may establish it is a resident of Texas but contends its principal
place of business does not establish it is an inhabitant[5]
of Texas for purposes of Article 21.42. 
To resolve this issue, we must determine whether, under the statute, a
corporation=s principal place of business can be
considered the place where it inhabits. 
No Texas state court has addressed this precise issue in construing the
language of Article 21.42.[6]









When interpreting a statute, we try to
give effect to legislative intent.  See
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex.
1999).  We look first to the plain and
common meaning of the statute=s words.  See id.  If the meaning of the statutory language is
unambiguous, we adopt, with few exceptions, the interpretation supported by the
plain meaning of the provision=s words and
terms.  See id.  Further, if a statute is unambiguous, we must
not use rules of construction or other extrinsic aids to create ambiguity.  See id. at 865B66.

It is a well-established general principle
that a corporation is an inhabitant only of the state where it is incorporated,
although it may be authorized to conduct its business in other states and may
in fact reside in more than one place.  Suttle
v. Reich Bros. Constr., 333 U.S. 163, 166 (1948) (noting that a corporation=s habitat Acan only be in the
state by which it was created, although it may do business in other states
whose laws permit it@); Pittsburg Water Heater Co. of Tex.
v. Sullivan, 115 Tex. 417, 423, 282 S.W. 576, 579 (1926) (AIt is very
generally held that a corporation is an inhabitant of the state under whose law
it is incorporated, and that it has a residence wherever it conducts its
ordinary business.@); 8 William
Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations ' 4025 (perm. ed.,
rev. vol. 2001) [hereinafter Fletcher
Cyclopedia] (AThe words inhabitant, resident and citizen
have been interpreted as contemplating the same condition, that of
domicile.  The legal existence, the home,
the domicile, the habitat, the residence, and the citizenship of the
corporation can only be in the state by which it was created, notwithstanding
it may lawfully do business in other states.@); Black=s Law Dictionary 703 (5th ed. 1979) (AA corporation can
be an inhabitant only in the state of its incorporation.@).[7]  








An exception to this general principle is
recognized when a state=s law requires a foreign corporation to
become domesticated in order to transact business in the state.  See 8 Fletcher Cyclopedia ' 4025 (explaining
that a corporation is a foreign corporation to all states other than the state
of its incorporation unless it is domesticated under the laws of a particular
state).  The inhabitancy of a corporation
has been extended to include its principle place of business, usually by
statute, in certain jurisdiction and venue rules because of the policies
regarding diversity of citizenship and forum availability.  Neirbo Co. v. Bethlehem Shipbuilding Corp.,
308 U.S. 165, 170, 173 (1939) (explaining how venue statutes expanded to
include corporations doing business in a state); 9 Fletcher Cyclopedia ' 4310; see also
Nat=l Truckers, 480 S.W.2d at
457B58. 

In this case, Travelers and Gulf cite cases and
commentary regarding the interpretation of older Texas venue provisions to
contend that the terms Ainhabitant@ and Aresident@ are synonymous and that, because Reddy Ice is admittedly a
resident of Texas, it is also an inhabitant of Texas under Article 21.42.  The venue provisions at issue in those cases
provided that no person who was an inhabitant of the state could be sued out of
the county in which he had his domicile.[8]  Pittsburg Water, 115 Tex. at 420B21, 282 S.W. at 578; Taylor v.
Wilson, 99 Tex. 651, 651, 93 S.W. 109, 109 (1906); Pearson v. West,
97 Tex. 238, 242, 77 S.W. 844, 945 (1904). 
The statute had numerous exceptions, one of which provided that when a
defendant did not reside in Texas, the suit could be brought in the county in
which the plaintiff resided.  Taylor,
99 Tex. at 653, 93 S.W. at 110.  








Travelers and Gulf rely on Taylor v. Wilson, in which
the defendant objected to being sued in the plaintiff=s county of residence.  Id. at 652.  The defendant was a citizen of New York and
maintained a residence in New York.  Id.  He did, however, also reside in Jefferson
County, Texas, and had been operating a business in Jefferson County for the 14
months prior to the filing of the lawsuit. 
Id.  The lower court found,
because the defendant was not an inhabitant of Texas, he could not claim the
benefit of being sued in the county of his residence.  Id. at 653.  The Supreme Court stated the purpose of the
venue statute was Ato require that when residents of this state, whether
citizens or not, are to be sued in its courts, they shall be entitled to be
sued in the counties where they reside.@ 
Id.  The court essentially
reasoned that a narrow interpretation of the term Ainhabitant@ would be inconsistent with the
purpose of the venue statute.  Id.  The court then found that, for purposes of
the venue statute, the terms Ainhabitant@ and Aresident@ must have the same meaning.[9]  Id. 
We
find the broad interpretation of those termsCdefined as
synonymous to effectuate the intent of the legislature in enacting the statuteCdoes not control
the resolution of the issue now before us.

Here, no exception applies to the
generally-accepted principle that a corporation is an inhabitant only of its
state of incorporation.  Article 21.42 is
not a jurisdiction or venue statute, and Texas does not require that a
corporation become domesticated in order to conduct business in the state.  See Tex.
Bus. Corp. Act Ann. art. 8.01 (Vernon 2003).  In sum, nothing in the statute indicates that
the term Ainhabitant@ should be defined
by the exception rather than the rule. 
Further, the United States and Texas supreme courts have cautioned that
Article 21.42 should be interpreted narrowly to avoid giving the statute an extraterritorial
effect.  Dunken, 266 U.S. at 399 (A[The predecessor
to Article 21.42] was incapable of being constitutionally applied to [the
contract at issue] since the effect of such application would be to regulate
business outside the state of Texas and control contracts made by citizens of
other states in disregard of their laws . . . .@); Austin Bldg.,
432 S.W.2d at 701 (A[Article 21.42] cannot be given
extraterritorial effect.@).  








Although it has a principle place of
business in Texas, Reddy Ice is a foreign corporation to Texas.  As a foreign corporation operating in Texas,
Reddy Ice is subject to general jurisdiction in the state, but we are hesitant
to find that Texas law should govern automatically any contract it enters with
an insurer doing business in Texas absent an express legislative directive in
the statute.  See TV-3, 28 F.
Supp. 2d at 417 (explaining that 
applying Article 21.42 to a foreign corporation doing business in Texas
would be Aexactly the sort of >extraterritorial
effect= proscribed by Austin
Building Company@). 
Accordingly, we adopt the interpretation supported by the plain meaning
of the statute and hold the unambiguous language of Article 21.42 restricts a
corporation=s inhabitancy to its place of
incorporation.  Because Reddy Ice is
incorporated in Nevada, it cannot be considered an inhabitant of Texas for
purposes of Article 21.42.

Most Significant Relationship

As no statutory directive governs the
dispute, we must determine which state has the most significant relationship to
the issue presented for determination. 
Section 6 of the Restatement (Second) Conflicts of Law provides the
following general considerations to inform a choice-of-law determination: (1)
the needs of the interstate and international systems; (2) the relevant
policies of the forum; (3) the relevant policies of other interested states and
the relative interests of those states in the determination of the particular
issue; (4) the protection of justified expectations; (5) the basic policies
underlying the particular field of law; (6) certainty, predictability and
uniformity of result; and (7) ease in the determination and application of the
law to be applied.  Duncan v. Cessna
Aircraft Co., 665 S.W.2d 414, 420B21 (Tex. 1984); Restatement (Second) of Conflict of Laws ' 6.  The relevant factors specific to contract
disputes include: (1) the place of contracting; (2) the place of negotiation;
(3) the place of performance; (4) the location of the subject matter of the
contract; and (5) the domicile, residence, nationality, place of incorporation,
and place of business of the parties.  Minn.
Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 735B36 (Tex. 1997); Restatement (Second) of Conflict of Laws ' 188(2).








Reddy Ice argues Texas courts have clearly
established that the place of performance is of paramount importance in service
contract cases.[10]  Although this is a correct statement of law,
it is important to note that the contract at issue here is an insurance
contract, not a service contract.  This
is a crucial difference because insurance contracts implicate industry-specific
considerations, which have been addressed in Texas case law and the Restatement
(Second) of Conflicts.








Notably, courts applying Texas law to
determine whether a party has a duty to defend or indemnify have found Awhen the issues of
a case require the construction and application of insurance policies . . . the
relevant inquiry is what contacts the state has with the insurance dispute, and
not with the underlying lawsuit.@  St. Paul Mercury Ins. Co. v. Lexington
Ins. Co., 78 F.3d 202, 205 (5th Cir. 1996). 
Moreover, courts applying Texas law have adopted the reasoning of
comment (a) to section 193 of the Restatement (Second) of Conflicts of Law to
hold that the location of the insured risk and the location of the subject matter
of the contract are neither significant nor determinative in deciding which law
to apply to multi-risk insurance contracts. 
See Restatement (Second)
of Conflict of Laws ' 193, cmt. a (AThe location of
the insured risk will be given greater weight than any other single contact in
determining the state of the applicable law provided that the risk can be
located, at least principally, in a single state.  Situations where this cannot be done . . .
include . . . where the policy covers a group of risks that are scattered
throughout two or more states.@); see also
Houston Cas. Co. v. Certain Underwriters at Lloyd=s London, 51 F. Supp. 2d
789, 797 (S.D. Tex. 1999) (AHCC=s obligation under
the parties= agreement was to pay a premium; the
Underwriters= obligation was to indemnify certain
losses.  Where the losses occurred
did not affect either obligation.  When
the contract is one of payment, the place of performance seems, in truth, of no
particular consequence.@).  

Reddy Ice contends that we should also
adopt comment (f) to the same section of the Restatement, which suggests that,
at least with respect to most policy issues, the court should treat multi-risk
policies as separate policies, each insuring an individual risk.  See
Restatement (Second) of Conflict of Laws ' 193, cmt. f.[11]  However, other Texas courts have declined to
do so because giving such weight to the location of the insured risk would
potentially subject an insurer, through one contract, to the laws of numerous
states on issues that are more appropriately determined by the state=s law that the
promulgated the policy form at issue.  See,
e.g., Houston Cas., 51 F. Supp. 2d at 797B98 (A>If [the insured]
were held to have a significant relationship with each state in which the
insured properties are located, he would potentially be subject to twenty
different state laws.  By analogy, the
owner of a fleet of ships would potentially be liable throughout every port
city in the United States.=@ (quoting Hefner
v. Republic Indem. Co. of Am., 773 F. Supp. 11, 13 (S.D. Tex. 1991)).








Because the policies at issue here provide
nationwide liability coverage, the place of contracting, the place of
negotiation, and the domicile, residence, nationality, place of incorporation,
and place of business of the parties become the primary factors to determine
which law applies.  Applying these
factors to the present case, we find that the application of Texas law to the
insurance contract was proper.  Travelers
is a Texas corporation with its principal place of business in Texas.  Gulf is a Connecticut corporation with its
principal place of business in New York. 
The contracts were negotiated in Texas. 
The Travelers policy was issued from Travelers= Texas office
through a Texas broker to the first-named insured, Packaged Ice, at its
principal place of business in Houston, Texas. 
The Gulf policy was issued to Packaged Ice in Texas in the course of
Gulf=s Texas
business.  The premiums were to be paid
in Texas by the first-named insured, a Texas corporation.  Notices of cancellation and of occurrences
triggering potential coverage were to be submitted in Texas.  Texas was, by all accounts, the center of the
relationship between the insurers and Reddy Ice.  Texas has a strong interest in the outcome of
an insurance coverage dispute that involves a Texas insurer, an insurer doing
business in Texas, and their contractual relationship with their insured, a
company principally operating in Texas. 
Louisiana has little interest in whether any settlements or judgments
are paid by Reddy Ice, or instead, by its insurers or in regulating the scope
of a pollution exclusion clause contained in an insurance policy issued in
Texas.  See Harrison v. R.R. Morrison
& Son, Inc., 862 So. 2d 1065, 1069B71 (La. Ct. App.
2003) (applying Mississippi law to pollution exclusion clause although lawsuit
was filed in Louisiana because Mississippi had a greater interest in regulating
an insurance policy issued in Mississippi).

We overrule Reddy Ice=s only issue, and
affirm the trial court=s judgment.

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Opinion filed August 24, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

 











[1]  Packaged Ice,
Incorporated is the first-named insured in the Travelers policy.  Reddy Ice is identified, however, as an
additional-named insured under the policy. 
Reddy Ice is not specifically identified in the Gulf policy but is an
insured under a provision that provides coverage to Aany other person or organization insured under any
policy of the >underlying insurance.=@





[2]  The Texas
Supreme Court has determined that a pollution exclusion clause, like the one
here, is unambiguous and bars coverage for claims similar to the claims
asserted in the Louisiana lawsuits.  See
Nat=l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 521B22 (Tex.
1995).  





[3]  The Louisiana
Supreme Court has held that a total pollution exclusion clause is ambiguous and
therefore presents an issue of fact regarding its applicability to a given
occurrence.  See Doerr v. Mobil Oil
Corp., 774 So. 2d 119, 135B36 (La. 2000).





[4]  We disagree
with the insurers= contention that, because Packaged Ice is a Texas
corporation, Article 21.42 applies.  See
Austin Bldg., 432 S.W.2d at 701 (finding that the relevant inquiry is
not whether one of the insureds is an inhabitant of Texas but whether the
insured involved in the dispute is an inhabitant of Texas).





[5]  Travelers and
Gulf do not argue Reddy Ice is a citizen of Texas.  Rather, they contend Reddy Ice is an
inhabitant of Texas.





[6]  Although one federal district court
in Texas has applied Article 21.42 to a dispute between an insurance company
doing business in Texas and an insured foreign corporation with a principal
place of business in Texas, it did so without defining the term Ainhabitant.@ 
See SynderGeneral Corp. v. Great Am. Ins. Co., 928 F. Supp. 674,
678 (N.D. Tex. 1996) (AThe parties agree that the claims
are governed by Texas law . . . . SynderGeneral has its principal place of
business in Texas.  U.S. Fire is an
insurance company doing business in the state. 
The policy was issued and delivered in Texas.  Therefore, [Article 21.42] requires the
application of Texas law.@). 
However, another federal district
court refused to apply Article 21.42 to a dispute involving a Mississippi
corporation because ATexas case law defines a corporation as an >inhabitant= of the
state where it is incorporated.@  TV-3, Inc.
v. Royal Ins. Co. of Am., 28 F. Supp. 2d 407, 417 (E.D. Tex. 1998).





[7]  See also, e.g., In re: Auto.
Refinishing Paint Antitrust Litig., 358 F.3d 288, 296 n.6 (3d Cir. 2004) (ABeing an >inhabitant= is held to mean incorporated under
the laws of that jurisdiction . . . . Being >found= in a district is generally equated
with >doing business= there, and requires greater
contacts than does >transacting business.@); Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d
947, 952B53 (1st Cir. 1984) (AUnder
the general provision allowing suit against a defendant in the district in
which >he is an inhabitant,= a
corporation could be sued only in the state in which it was incorporated even
though it was engaged in business in another state.@); Barber-Greene Co. v. Blaw-Knox Co., 239 F.2d
774, 777 (6th Cir. 1957) (AIt had long been settled . . . a corporation was an
inhabitant only of the state of incorporation.@).





[8]  The venue
provision in 1895 contained the term Ainhabitant,@ and the term remained in the venue provisions until a
later version of the statute was repealed in 1985.  Act of June 16, 1985, 69th Leg., R.S., ch.
959, 1985 Tex. Gen. Laws 3322.  The
current venue rules do not use the term Ainhabitant.@  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a) (Vernon 2002) (providing that a lawsuit may
be filed Ain the defendant=s
principal office in this state, if the defendant is not a natural person@).





[9]  See also
Pittsburg Water, 115 Tex. at 421, 282 S.W. at 578 (AIn construing aforesaid [venue] statues, which
have been the law in this state for more than half a century, our Supreme Court
has held that >resident= and >inhabitant= convey
the same meaning.@); Pearson v. West, 77 S.W. 844, 945 (Tex.
1904) (AThe general rule for determining the venue of
suits in this state is prescribed by . . . article . . . 1194 . . . . The
statute also uses >inhabitant.=  An inhabitant and resident mean the same
thing.@); McDonald
& Carlson, Texas Civil Practice ' 6:5 (2d ed.1991) (AHistorically,
any person >who is an inhabitant=, as the
phrase formerly appeared in the basic venue rule, could be sued in the
county of residency.  >Inhabitant= was
construed broadly . . . .@) (emphasis added). 






[10]  Reddy Ice
relies primarily on Chesapeake v. Operating, Inc. v. Nabors Drilling USA,
Inc., 94 S.W.3d 163 (Tex. App.CHouston
[14th Dist.] 2002, no pet.), for this proposition.  In Chesapeake, this court found
Texas law applied to an indemnity provision contained in a service contract
between an oil-well operator and drilling contractor.  Id. at 180.  The contract at issue contained a mutual
indemnity provision that had been interpreted differently under Texas and
Louisiana law.  Id. at 169.  We noted it is more appropriate to consider
the disputed contractual issue separately from the contract as a whole, and
because the dispute concerned the indemnity clause, we determined that the
place of performance should be tied to the indemnity obligation.  Id. 
Thus, we evaluated which state had the most significant relationship to
the disputed issue, using the place of the performance of the indemnity
obligation as a prime factor because the Supreme Court has elevated that factor
in service contracts.  Id. at 171B79.  We found
Texas law should be applied as the lawsuits had been filed in Texas and the
indemnification would be made to or from Texas. 
Id. at 179B80.  Here, we
are not tasked with determining which state has the most significant
relationship to the indemnity clause. 
Rather, we are determining which state has the most significant
relationship to the issue of excluding pollution-related incidents from
coverage under general commercial liability policies.





[11]  Comment (f) to section 193 of the
Restatement (Second) of Conflicts provides:

Multiple risk policies. 
A special problem is presented by multiple risk policies which insure
against risks located in several states. 
A single policy may, for example, insure dwelling houses located in
states X, Y, and Z.  These states may
require that any fire insurance policy on buildings situated within their
territory shall be in a special statutory form. 
If so, the single policy will usually incorporate the special statutory
forms of the several states involved. 
Presumably, the courts would be inclined to treat such a case, at
least with respect to most issues, as if it involved three policies, each
insuring an individual risk.  So, if the
house located in state X were damaged by fire, it is thought that the court
would determine the rights and obligations of the parties under the policy, at
least with respect to most issues, in accordance to the local law of
X.  In any event, that part of the
policy which incorporates the special statutory form of a state would be
construed in accordance with the rules of construction of that state.

Restatement
(Second) of Conflict of Laws ' 193, cmt. f (emphasis added).  Although the Travelers policy contains
statewide forms, the trial court was not interpreting language contained on one
of the statewide forms.  Rather, it was
interpreting the pollution exclusion clause contained on the commercial general
liability form.