**STATE FARM FIRE & CASUALTY COMPANY, Appellant,**

v.

**Merle J. VOLDING et ux., Appellees.**

**No. 17075.**

Court of Civil Appeals of Texas.

Dallas.

March 29, 1968.

Rehearing Denied April 19, 1968.

Larry L. Gollaher, of Thompson, Coe, Cousins & Irons, Dallas, for appellant.

Sam S. Stollenwerck, of Dalton, Moore, Ford & Joiner, Dallas, for appellees.

BATEMAN, Justice.

This is a suit on a homeowner's policy issued by appellant State Farm Fire & Casualty Company to the appellees Merle J. Volding and wife. The latter claimed damage to their dwelling as a result of rain water entering the pores of some of the brick in the chimney and two adjoining walls of their home, and freezing, causing portions of those bricks to become "detached, cracked, collapsed and crumbled." The appellant answered that the loss fell within certain specific exclusions contained in the policy. Both sides moved for summary judgment, that of the appellees was sustained and that of the appellant was overruled.

In four points of error on appeal the appellant complains of the summary judgment rendered, and the failure of the court to render summary judgment for it, because the loss was as a matter of law specifically excluded by the terms of the policy.

The policy in question insured appellees against "all risks of physical loss" to their home except those expressly excluded. Appellant relies on paragraphs i. and k. in that part of the policy under the heading

"EXCLUSIONS" providing that the insurance does not cover:

"i. Loss caused by *inherent vice,* wear and tear, deterioration; rust, rot, mould or other fungi; dampness of atmosphere, *extremes of temperature;* contamination; vermin, termites, moths or other insects;

"k. Loss under Coverage A caused by settling, *cracking,* bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools." (Italics ours.)

According to the undisputed evidence, the chimney of the dwelling, as well as the adjoining walls around the patio and back yard, were constructed of two kinds of brick. One, of a darker color, was more porous and absorbed water more freely than the other. Laboratory tests made after the loss consisted of the immersion of both types of brick in water for four hours at room temperature, and then submitting them to freezing temperatures. It was observed that the darker colored brick had started to crack through the center. They were then immersed again in water for four hours, again subjected to freezing, after which several cracks started to appear in the darker colored brick. The bricks were then subjected to the same thawing and freezing for two more cycles, and each time the darker brick cracked with increasing severity, while the lighter colored brick showed no ill effects.

On a morning in January, 1966 Volding discovered that the exposed portions of a substantial number of the darker colored bricks had become detached and had fallen to the ground. An average rain had fallen the previous day, followed by a drop of temperature to well below freezing. It was the unchallenged opinion of an expert witness that the loss was caused by rain water entering the pores of the brick, then freezing, causing the bricks to crack and the facing thereof to fall away. This same witness testified that this type of brick was not recommended for use in this type of construction.

Appellant says that this was not a hazard covered by the policy, relying heavily upon our opinion in McKool v. Reliance Ins. Co., 386 S.W.2d 344 (Tex.Civ.App., Dallas 1965, writ dism'd). The facts of that case, though in some respects similar, are not identical with those in the case at bar. Exclusions i. and k. are exactly the same in both policies, although the contention made in *McKool,* that these exclusions did not apply because the loss was caused by "water damage", is not made in the present case. In our opinion, the two cases are alike in that the damage was caused by "extremes of temperature" in both cases, thus making Exclusion i. applicable.

Moreover, it appears from the undisputed evidence that the bricks which were damaged by the freezing were not suitable for use in outside walls or other structures exposed to the weather, and when so used they were subject to the very injury disclosed by this record. This porous condition of the brick was a fault or defect, a quality which may properly be called an "inherent vice" which made the article unsuitable for use in areas not protected from the weather. It seems to us, therefore, that the actual cause of the loss here is clearly within the explanation of the term "inherent vice" found in Employers Casualty Co. v. Holm, 393 S.W.2d 363, 367 (Tex.Civ.App., Houston, 1st Dist. 1965, no writ):

"The term 'inherent vice' as a cause of loss not covered by the policy, does not relate to an extraneous cause but to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. The vice must be inherent in the property for which recovery is sought. Mayeri v. Glens Falls Ins. Co., Sup., 85 N.Y.S.2d 370; see Texas & P. Ry. Co. v. Prunty, Tex.Civ.App., 233 S.W. 625; Richards on the Law of Insurance, Fifth Edition, 1952, Vol. 2, p. 721, Sec. 212."

See also Aetna Casualty & Surety Co. v. Yates, 344 F.2d 939 (5th Cir. 1965).

This defect or vice in the bricks was a cause in fact of their "own injury or destruction" in that such injury or destruction would not have occurred except for the vice. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560, 564 (1961); Medallion Stores, Inc. v. Eidt, 405 S.W.2d 417, 422 (Tex.Civ.App., Texarkana 1966, writ ref'd n. r. e.).

The policy also included Exclusion e., as follows:

"Loss caused by or resulting from freezing while the building is unoccupied unless the Insured shall have exercised due diligence with respect to maintaining heat in the building or unless plumbing, heating and air-conditioning systems had been drained and the water supply shut off during such unoccupancy."

Appellees argue that the phrase "extremes of temperature," as construed by us, is incompatible with the language of Exclusion e. which indicates clearly that freezing *is* a peril insured against under certain circumstances. They also argue that in any event, the policy is ambiguous in this respect.

The force and logic of this argument are not lost upon us. However, Exclusion e. obviously relates only to the freezing of pipes in the plumbing, heating and air-conditioning systems and then only when the building is unoccupied. The exclusion is therefore wholly inapplicable to the facts of this case. Moreover, an exclusionary clause, such as this, can never be said to create coverage where none existed before.

We do not agree with appellant's contention that the loss was caused by "cracking" and therefore within the purview of Exclusion k. Its third point of error is therefore overruled.

Being of the opinion that the loss here was shown by the undisputed evidence to have been caused by inherent vice in the damaged bricks, as well as by extremes of temperature, and that the loss was therefore specifically excluded by Exclusion i. of the policy, it is our opinion that the trial court should have overruled appellees' motion for summary judgment and sustained that of appellant. Therefore, we sustain appellant's first, second and forth points of error and reverse the judgment of the trial court and, as authorized by Rule 434, Vernon's Texas Rules of Civil Procedure, we now render the judgment which the trial court should have rendered, and that is that appellant's motion for summary judgment be sustained and that appellees take nothing by their suit. Gulf, Colorado & Santa Fe Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1959).

Reversed and rendered.