Elizabeth **BLAYLOCK** and The Estate of Lloyd Blaylock, Deceased, Appellants,

v.

**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Appellee.**

No. 8937.

Court of Appeals of Texas, Texarkana.

Oct. 20, 1981.

Rehearing Denied Dec. 8, 1981.

Pat Reed, Dallas, for appellants.

Christopher A. Payne, Vial, Hamilton, Koch, Tubb, Knox and Stradley, Dallas, for appellee.

CORNELIUS, Chief Justice.

This is an appeal from a take nothing judgment rendered in the non-jury trial of a suit seeking payment under a homeowner's insurance policy for damages to the insured's swimming pool and its appurtenant plumbing and fixtures. Both parties agree that the sole issue to be determined is whether recovery for the loss is precluded by the terms of any of four particular exclusions of coverage contained in the insurance policy.

The facts, except on the question of causation, are undisputed. The City of Dallas experienced a severe ice storm the evening of December 31, 1978, and early morning of January 1, 1979. Mrs. Blaylock, who lived alone, was out of town with her son. They arrived back at her home in Dallas at about 7:30 p. m. on December 31. They discovered that the electric power was off, so Mrs. Blaylock went home with her son to spend the night. Sometime between 2:30 a. m. and 12:00 noon on January 1, 1979, the water in the swimming pool's circulation system froze, causing damage to the water lines, filter, pump, heater, motors and pool sweep. The water in the lines, filter, and basket strainer froze solid, the filter burst open, the heat exchangers were broken by the freezing water, the pool sweep, pump and motor were frozen, and the motor was burned out. Blaylock's evidence indicated that ice collecting on trees caused some of the limbs to break and fall on certain electric lines, and that the resulting power failure caused the water in the plumbing to stop circulating, which in turn caused it to freeze.

American Guarantee relies on the following four exclusions of coverage contained in the policy:

"k. Loss under Coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools."

"e. Loss caused by or resulting from freezing while the building is unoccupied unless the Insured shall have exercised due diligence with respect to maintaining heat in the building or unless plumbing, heating and air-conditioning systems had been drained and the water supply shut off during such unoccupancy."

"a. Loss to electrical appliances, devices, or wiring caused by electricity, other than lightning."

"i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mold or other fungi; dampness of atmosphere, extremes of temperature; contamination; vermin, termites, moths or other insects."

■ The burden was on Mrs. Blaylock to establish that her loss did not come within the exclusions of the policy. Tex.R.Civ.P. 94; *Travelers Indemnity Co. v. McKillip*, 469 S.W.2d 160 (Tex.1971); *Bentley v. National Standard Ins. Co.*, 507 S.W.2d 652 (Tex.Civ.App.—Waco 1974, ref. n. r. e.). We have concluded that she failed to establish that the loss was not excluded by exclusions "k" and "e", and that the trial court correctly rendered judgment for the insurer.

■ Exclusion "k" denies recovery for loss "by settling, cracking, bulging, shrinkage, or expansion of ... swimming pools." The testimony established that the pump and circulation system would be considered an integral part of the swimming pool, according to the usual and ordinary meaning of that term. It was undisputed that much of the damage to the piping and other elements of the circulation system were by the splitting or rupturing of those elements because of the freezing of the water. That damage would therefore come within the cracking and expansion provisions mentioned in exclusion "k". Mrs. Blaylock argues that the exclusion should not apply because the cracking or expansion was not the *cause* of the loss, but was the *result* of a preceding cause, i.e., the power failure, but causation is not material in this instance. The language of the exclusion determines whether causation is material. In exclusion "k" the cause is irrelevant; if the loss was *by* cracking or expansion it is excluded by the express terms of the provision, even if some other event caused the cracking or expansion. See *General Ins. Co. of America v. Hallmark*, 575 S.W.2d 134 (Tex.Civ.App.—Eastland 1978, ref. n. r. e.); *Lambros v. Standard Fire Ins. Co.*, 530 S.W.2d 138 (Tex. Civ.App.—San Antonio 1975, writ refused); *Bentley v. National Standard Ins. Co.*, supra.

■ Exclusion "e" likewise precludes recovery. It excludes losses caused by freezing occurring while the building is unoccupied unless the insured has taken certain precautions to guard against damage from freezing. The undisputed evidence in this record shows that the damage was caused by freezing, and there was no showing that the required precautions were taken.

■ Although the exclusion refers to loss occurring while "the building" is unoccupied, the term building is not defined as being limited to only the residence structure itself, and we believe a fair construction of the policy provisions would compel the conclusion that as used in exclusion "e" the term building would include such related appurtenances as the swimming pool circulation system. For example, "Coverage A" of the policy provides protection for the "dwelling", and within certain limits, for "other private structures on the premises used in connection with the occupancy of the dwelling and not in contact therewith", and exclusion "k" specifically refers to swimming pools as being within the general "Coverage A—Dwelling".

For the reasons stated the judgment of the trial court is affirmed.