Elizabeth BLAYLOCK and the Estate of Lloyd Blaylock, Petitioner,

v.

AMERICAN GUARANTEE BANK LIABILITY INSURANCE COMPANY, Respondent.

No. C-992.

Supreme Court of Texas.

May 12, 1982.

Rehearing Denied June 9, 1982.

Reed & Reed, Pat Reed, Dallas, for petitioner.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Jeffrey S. Lynch, Dallas, for respondent.

SPEARS, Justice.

Petitioner Elizabeth Blaylock, individually and on behalf of the estate of Lloyd Blaylock, deceased, sued American Guarantee and Liability Insurance Company ("American") to collect on her homeowners policy for damage done when swimming pool equipment froze. The issue before us is whether certain exclusions to the policy foreclosed coverage of the damage.

The trial court rendered judgment that Mrs. Blaylock take nothing. The court of appeals affirmed, holding that coverage was excluded under two policy provisions. 626 S.W.2d 541. We reverse the judgment of the court of appeals and render judgment for Mrs. Blaylock.

Mrs. Blaylock owned a house in Dallas, Texas. In 1978, she took out a Texas Standard Homeowners Policy with American. It is stipulated that the policy was in full force and effect at all times pertinent to this suit.

On December 31, 1978, at about 7:30 p.m., Mrs. Blaylock returned to her Dallas home from a trip to Colorado and found that the electrical power was out. There had been an ice storm that day in Dallas. Ice laden tree limbs falling on power lines had caused a power failure. Not wanting to spend the night in her house without electrical power, Mrs. Blaylock spent the night at her son's house. The next morning, Mrs. Blaylock and her son returned to her house to find that the circulation system for her swimming pool had frozen solid and was severely damaged. The power failure had caused the circulating pumps not to function, making the water more likely to freeze.

Mrs. Blaylock sought indemnity under her insurance policy with American for damage to her pool equipment. American refused to compensate Mrs. Blaylock for her loss, claiming the loss was excluded under the following policy provisions:

... This insurance does not cover:

a. Loss to electrical appliances, devices, or wiring caused by electricity, other than lightning;

\* \* \* \* \* \*

e. Loss caused by or resulting from freezing while the building is unoccupied unless the Insured shall have exercised due diligence with respect to maintaining heat in the building or unless plumbing, heating and air-conditioning systems had been drained and the water supply shut off during such unoccupancy;

\* \* \* \* \* \*

i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mold or other fungi; dampness of atmosphere, extremes of temperature; contamination; vermin, termites, moths or other insects.

\* \* \* \* \* \*

k. Loss under Coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, wall, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

In a non-jury trial before the court, Mrs. Blaylock's damages were stipulated at $2,292.00 plus interest. The only issue before the court was the applicability of the four exclusions set out above. The only witnesses at the trial were those called by Mrs. Blaylock. The trial court rendered judgment that Mrs. Blaylock take nothing. No findings of fact or conclusions of law were requested or filed.

The court of appeals held that exclusions "e" and "k" precluded coverage of Mrs. Blaylock's loss, and affirmed the judgment of the trial court.

The material facts of this case are either stipulated or uncontested. The questions before us involve construction of the exclusions contained in the insurance policy.

■ In construing the insurance policy, we look to the plain language of the contract, and such language will be given effect when the parties' intent may be discerned from that language. *Glover v. National Insurance Underwriters*, 545 S.W.2d 755 (Tex.1977). However, when the language used is subject to two or more reasonable interpretations, the construction which affords coverage will be adopted. *Glover v. National Insurance Underwriters, supra; United Founders Life Ins. v. Carey*, 363 S.W.2d 236 (Tex.1962). The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation. *Ramsay v. Maryland American General Ins. Co.*, 533 S.W.2d 344 (Tex.1976).

■ We first address the exclusions which the court of appeals expressly found

to be applicable. Exclusion "e" applies to loss "caused by or resulting from freezing while the building is unoccupied . . . ." The word "unoccupied" is not defined in the policy, and the policy states no time period during which the property must be unoccupied in order to defeat coverage; however, the term "occupied" has an established meaning in the law of insurance. A house is "occupied" when human beings habitually live in it as a place of abode; a house is unoccupied when it ceases to be used for living purposes or as a customary place of human habitation. *Republic Ins. Co. v. Watson*, 70 S.W.2d 441 (Tex.Civ.App.— Beaumont 1934, writ dism'd); *Transcontinental Ins. Co. of New York v. Frazier*, 60 S.W.2d 268 (Tex.Civ.App.—Waco 1933, no writ); 4A Appleman, Insurance Law and Practice § 2833; 8 Couch on Insurance 2d § 37:836. A mere temporary absence from the premises will not render the house "unoccupied." *Westchester Fire Ins. Co. v. Redditt*, 196 S.W. 334 (Tex.Civ.App.—Beaumont 1917, writ ref'd); *Washington Fire Ins. v. Cobb*, 163 S.W. 608 (Tex.Civ.App.— San Antonio 1914, no writ); 8 Couch on Insurance 2d § 37:828.

■ The uncontroverted evidence shows that since 1969, Mrs. Blaylock had occupied the house insured by American as her home. Mrs. Blaylock came home on the evening of December 31, 1978, but left soon to spend the night at her son's house. She returned home again the next morning. Mrs. Blaylock's absence from the house on December 31 was merely temporary and did not render the house unoccupied for purposes of this exclusion.

■ Exclusion "k" is also inapplicable to the damage suffered by Mrs. Blaylock. That exclusion precludes recovery for loss "caused by settling, cracking, bulging, shrinkage or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools." Mrs. Blaylock does not sue for damage to the pool structure itself, but only for damage to the circulation system connected to the pool. American con-

tends that exclusion "k" applies here because the loss was caused by the expansion due to freezing of pipes which it contends are an integral part of the swimming pool. However, exclusion "k" does not preclude coverage for freezing of pipes. This construction of the policy is supported by an examination of the context in which the swimming pool is mentioned in exclusion "k". The swimming pool is included in the exclusion along with various structural components of the house such as walls, foundations, floors, etc. which tend to be subject to damage from natural settling, cracking and expansion. The pipes, filters and motors involved here are not structural components of the swimming pool or the house.

■ Significantly, exclusion "e," discussed previously, clearly implies that freezing of pipes is a covered peril if the house is occupied or precautions are taken. Most if not all pipes are contained in or connected with the structural components listed in exclusion "k." If exclusion "k" were read as suggested by American, it would render exclusion "e" nugatory. Coverage for freezing of pipes would always be prevented by exclusion "k" regardless of occupancy. A contract will not be construed so as to render some of its terms meaningless. *Chapa v. Reid*, 248 S.W.2d 299 (Tex.Civ. App.—San Antonio 1952, writ ref'd). Thus, it is clear that this provision was meant to exclude only damage to the structure of the swimming pool resulting from expansion, cracking and bulging and does not exclude freezing of the pipes and various appliances apart from the structure which service the pool.

The court of appeals did not consider the applicability of exclusions "a" and "i" pleaded by American. Because we look to unconsidered grounds presented to the court of appeals for affirmance of the judgment below, we address the applicability of these exclusions. *McKelvy v. Barber*, 381 S.W.2d 59 (Tex.1964); Tex.R.Civ.Pro. 505.

■ American contended in the courts below that exclusion "a" applies to the present facts. That exclusion denies coverage for loss "to electrical appliances, devices, or wiring caused by electricity other than lightning." Freezing was the immediate cause of the damage to Mrs. Blaylock's pool equipment. Since Mrs. Blaylock's house was occupied, freezing was a peril covered by the policy from American. The freezing in this case occurred after a power failure rendered the pool system's normal safeguards against such damage ineffective. American contends that damage to the electrical devices in the system was thus caused by electricity. We disagree. We are bound to construe exceptions to the policy narrowly in favor of the insured. *Ramsay v. Maryland American General Ins., supra.* We cannot extend the exclusion for loss "caused by electricity" to a loss in which a *lack* of electricity was a contributing factor.

■ American also argued to the court of appeals that exclusion "i," precluding coverage for "loss caused by . . . extremes of temperature," applies to Mrs. Blaylock's damage. American contends that in ordinary and customary usage, an unusual or unexpected temperature is an "extreme of temperature," citing Webster's New Collegiate Dictionary. We agree that a temperature must be unexpected or unusual in order to be extreme.[1] However, the damage to the pool circulation system occurred on December 31, 1978, while the outside temperature was about 23 degrees. A meteorologist testified at trial that 23 degrees was within the "normal recurring range of temperatures" for Dallas, Texas at that time of year. Temperatures as cold or colder than those experienced on December 31, 1978, occurred over ninety times in the eight years preceding the night in question. This testimony was uncontradicted and un-

---

1. One court of civil appeals has indicated in two opinions that any temperature cold enough to cause freezing is an "extreme of temperature." *State Farm Fire & Casualty Co. v. Volding*, 426 S.W.2d 907 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.); *McKool v. Reliance Ins. Co.*, 386 S.W.2d 344 (Tex.Civ.App.—Dallas 1965, writ dism'd). We disapprove this language.

impeached. The testimony as to the regular recurrence of such temperatures was of fact, not opinion; therefore, the trier of fact was not free to disregard this testimony. *See Gregory v. Texas Employer's Ins. Ass'n,* 530 S.W.2d 105, 107 (Tex.1975). Mrs. Blaylock proved with uncontroverted evidence that the temperatures on the night in question were not unusual or unexpected and exclusion "i" is not applicable.[2]

Mrs. Blaylock established as a matter of law that the policy exclusions pleaded by American were not applicable to her loss. Therefore, we reverse the judgments of the courts below and render judgment for Mrs. Blaylock.

---

2. Mrs. Blaylock also contends that the exclusions pleaded by American are inapplicable to her loss because the ultimate cause of the loss was the ice storm, not the freezing of the pipes. Because we have held the exclusions are inapplicable to the loss for the reasons already stated, we need not address the causation issue.