IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0849
════════════
 
PAJ, Inc., d/b/a Prime Art 
& Jewel, Petitioner,
 
v.
 
The Hanover Insurance 
Company, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
 
Argued October 18, 
2006
 
 
 
Justice Willett, joined by Justice Hecht, Justice Wainwright, and 
Justice Johnson, dissenting.
 
I 
respectfully dissent. I would follow Members Mutual Insurance Co. v. Cutaia[1] and hold that a policy’s unambiguous 
notice-of-suit language, a condition precedent to coverage, constitutes a 
defense to liability and must be enforced as written, unless positive law 
dictates otherwise.[2] Because positive law does not dictate 
otherwise, I would affirm the court of appeals.
 
I. 
Discussion
 
PAJ argues 
that under Hernandez v. Gulf Group Lloyds[3] and Harwell v. State Farm Mutual 
Automobile Insurance Co.,[4] the policy’s notice provisions are 
covenants, not conditions precedent to coverage, and therefore Hanover must demonstrate 
prejudice before denying coverage for untimely notice. I disagree. Settled 
Texas 
precedent construes notice provisions as conditions precedent 
that impose no prejudice requirement, unless the policy’s literal text, a 
statute, or an agency directive demands it.
 
A.        
The Timely Notice Provision Is a Condition Precedent, Not a Covenant
 
The parties 
dispute whether the policy’s prompt-notice language constitutes a condition 
precedent (as Hanover argues), the failure of which defeats coverage,[5] or a covenant (as PAJ argues), the breach 
of which, if immaterial, does not defeat coverage.[6] PAJ concedes that “[f]or years, Texas 
courts have held that timely notice of suit provisions in liability insurance 
policies [are] conditions to coverage” and that a “long line of Texas cases 
hold[s] that the notice requirements of policies similar to the Policies [in 
this case] are conditions precedent to liability,” but contends that those cases 
involved “materially different” policy language.
This Court 
has indeed repeatedly described insurance policy notice provisions as conditions 
precedent to coverage.[7] In 1972, we held in Cutaia that when a notice provision requiring 
the immediate forwarding of suit papers is breached, “liability on the claim 
[was] discharged, and harm (or lack of it) resulting from the breach [is] 
immaterial.”[8] The policy in Cutaia provided that “‘no action shall lie against 
the company unless, as a condition precedent thereto, the insured shall have 
fully complied with all the terms of this policy,’” including the notice 
requirement in issue.[9]
PAJ insists 
the notice requirement in Hanover’s CGL policy is necessarily a covenant 
because it omits the “as a condition precedent thereto” clause present in the 
Cutaia policy. I disagree. “Magic words” are 
not controlling; labeling something a “condition precedent” does not make it so, 
and the absence of such a label does not make it not so. Whether a notice 
provision constitutes a condition precedent turns on what the provision actually 
does, its nature and purpose, not merely on what it is called or because it 
appears under a heading, as here, that includes the word “Conditions.” “A 
condition precedent may be either a condition to the formation of a contract or 
to an obligation to perform an existing agreement.”[10] A condition precedent to an obligation 
to perform is an act or event that “must occur before there is a right to 
immediate performance and before there is a breach of contractual duty”[11]; failure to comply with such a condition forfeits coverage and releases the insurer from 
any duty to defend or indemnify.[12] By contrast, a covenant is “an agreement 
to act or refrain from acting in a certain way,”[13] and only a material breach will forfeit 
coverage.[14] While no mantra or magic words are 
necessary, an intent to create a condition precedent is 
sometimes indicated by the use of conditional terms such as “if,” “provided 
that,” “on condition that,” or some similar limiting phrase that conditions 
performance.[15] As the Court has explained, such terms 
“usually connote an intent for a condition rather than 
a promise.”[16]
The notice 
provision at issue is a condition precedent, as coverage is expressly 
conditioned on compliance with the notice requirement. Section IV of the policy, 
entitled “Commercial General Liability Conditions,” contains a list of “Duties 
In The Event Of Occurrence, Offense, Claim Or Suit,” one of which states: “If a 
claim is made or ‘suit’ is brought against any insured, you must . . . . 
[n]otify us as soon as practicable.” Section IV also 
specifies that “[n]o person or organization has a right under this Coverage Part 
. . . to sue us on this Coverage Part unless all of its terms have been fully 
complied with” (emphasis added). The prompt-notice requirement, expressly 
identified in the policy as a condition and, more importantly, providing that no 
suit may take place absent full compliance, is plainly a condition that precedes 
the insurer’s obligations to perform under the policy.
PAJ’s reliance on Hernandez is misplaced. 
Hernandez involved an insured’s breach of a settlement-without-consent 
exclusion in an automobile policy, which said that the insurance did not apply 
to “bodily injury or property damage with respect to which the insured . . . 
shall, without written consent of the company, make any settlement with any 
person or organization who may be legally liable therefor.”[17] Rather than treat the exclusion as a 
condition precedent, the Court viewed it as a covenant, an ordinary contractual 
obligation, the performance of which was excused only if the breach were 
material.[18] As such, we found it “unenforceable 
absent a showing by the insurer that it has been prejudiced by an insured’s 
failure to obtain consent before settling.”[19] The Court recognized a prejudice 
requirement in Hernandez consistent with the basic contract law principle 
that one party’s breach of a covenant must be material in order to excuse 
performance by the other party.[20]
Hernandez’s 
materiality-of-breach analysis is inapposite here because PAJ did not breach a 
covenant. Rather, it failed to comply with a condition precedent, a strict 
requirement that precedes any obligation on the part of Hanover under the policy. 
As noted above, and as PAJ concedes, the Court has long and consistently treated 
notice requirements as conditions precedent to coverage rather than covenants.[21] Such treatment flows naturally from the 
fact that performance of an obligation to defend or indemnify cannot ordinarily 
be expected of an insurer until it first receives notice of a claim’s existence. 
Breach of a settlement-without-consent exclusion, on the other hand, might occur 
long after the insurer has learned of a suit and assumed its duty to defend. 
Hence, I agree with the court of appeals in this case in recognizing “a 
significant difference between a policy condition (performance of which is 
necessary to trigger any obligation for coverage) and a policy exclusion (which 
operates only after the obligation for coverage is in place).”[22] Further, treating 
every breach of a settlement-without-consent clause as automatically ending the 
insurer’s obligations not only makes little sense from a timing standpoint but 
also disserves the interests of both parties to the insurance contract. 
It is easy to conceive of instances where a resourceful insured succeeds through 
its own efforts in obtaining a favorable third-party settlement that the insurer 
is only too happy to fund. Considering the prejudice, if any, 
to the insurer of a breach of the consent requirement is therefore 
warranted. On the other hand, it is hard to conceive of an instance where 
a failure to give notice of a suit or claim at the outset of litigation would 
ever operate to the insurer’s benefit. In short, Hernandez is 
distinguishable.
 
B.        
A Late-Notice Defense Should Require No Showing of Prejudice Unless the Policy 
or Positive Law Specifically Provides Otherwise
 
PAJ’s reliance on our 1995 decision in Harwell 
likewise falls short. In Harwell, prejudice was expressly required by the 
policy itself: “If we show that your failure to provide notice prejudices our 
defense, there is no liability coverage under the policy.”[23] Given this unambiguous requirement, we 
enforced the contract’s literal text and examined whether the insurer had in 
fact demonstrated actual prejudice.[24] PAJ’s policy, 
by contrast, does not require the insurer to show prejudice with respect to 
advertising injury claims.
In Cutaia, we held that a late-notice defense requires 
no showing of prejudice, refusing to “insert a provision that violations of 
conditions precedent will be excused if no harm results from their violation.”[25] The Board of Insurance (now the Texas 
Department of Insurance (TDI)) responded the following year, issuing two Board 
orders mandating a prejudice requirement for bodily injury and property damage 
coverage in automobile and general liability policies:
 
As 
respects bodily injury liability coverage and property damage liability 
coverage, unless the company is prejudiced by the insured’s failure to comply 
with the requirement, any provision of this policy requiring the insured to give 
notice of action, occurrence or loss, or requiring the insured to forward 
demands, notices, summons or other legal process, shall not bar liability under 
this policy.[26]
 
PAJ casts this 
1973 Board action as a “regulatory rejection” of Cutaia’s no-prejudice rule. As concerns the 
dispositive issue before us, I disagree. This Board-mandated policy language, 
while clearly applicable to the automobile policy in Harwell, was not an 
across-the-board abrogation of Cutaia’s 
no-prejudice rule; by its terms, the Board’s endorsement reaches only certain 
lines of insurance and a defined subset of claims for bodily injury and property 
damage.
PAJ’s policy provided for three kinds of coverage: Coverage 
A, for bodily injury and property damage; Coverage B, for personal and 
advertising injury; and Coverage C, for medical payments. The agency’s required 
endorsement is targeted solely at Coverage A. The endorsement imposes no 
prejudice requirement for any other types of coverages.
My text-based 
construction of the policy is consistent with the principle of expressio unius est exclusio alterius, meaning 
that the naming of one implies the exclusion of others.[27] This maxim, while not conclusive, is 
useful and applies perfectly here, where TDI’s 
prejudice requirement, by its terms, covers only a specified subset of claims. 
My construction also honors stare decisis as explained 
recently in Fiess v. State Farm 
Lloyds.[28] In Fiess, the Court discussed one of our prior decisions 
and observed that if TDI disputed our construction of the insurance policy in 
that case, “it is strange that insurance regulators did nothing to change the 
policy for a quarter century.”[29] In the instant case, the Board 
acted following Cutaia, but in a circumscribed 
manner.
The Court 
points out that the prejudice requirement TDI imposed in 1973 predated the 
availability of CGL coverage for advertising injury. True enough, but as the 
Court also acknowledges, such coverage has now been available through standard 
CGL policies for nearly three decades during which TDI declined to broaden its 
1973 order even as new coverages, like advertising 
injury, were added to the standard CGL policy. Given this lengthy inaction by 
the agency charged with mandating changes in policy forms, Fiess counsels us to “decline the invitation to 
overrule” our earlier precedent.[30] If anything, the argument for deference 
to state regulators in the instant case is even stronger than it was in Cutaia. The Board responded swiftly following Cutaia, to be sure, but also surgically, overriding 
Cutaia as to some coverages but not others. The implication from 
this targeted response followed by decades of subsequent executive and 
legislative inaction is plain: Hanover must show prejudice from late notice 
of bodily injury and property damage claims but not from late notice of 
advertising injury claims.
I would 
reaffirm Cutaia’s recognition that the 
Legislature and the state agency overseeing the insurance industry are better 
suited to decide whether an insurer must show prejudice to deny coverage based 
on late notice. TDI and legislators are free to supplant Cutaia’s no-prejudice rule with a more liberal 
notice-prejudice rule if they believe, on public policy grounds, that the latter 
is preferable. I would not fault them for doing so. But when interpreting 
text—whether a contract, regulatory edict, statute, or constitution—formalism 
matters, and key to formalism is consistency in entrusting policy matters to 
policymakers.
In any event, 
I find it understandable that an insurer would insist on a strict notice 
requirement. An insured’s failure to provide prompt notice of a suit or claim to 
an insurer, who has the resources and experience to handle such claims, can 
obviously work a substantial hardship on both the insurer and the insured. The 
insurer understandably wishes to discourage late notice and to avoid ancillary 
litigation devoted to whether or not it was prejudiced by a failure to provide 
prompt notice; litigation could have the effect of raising premiums on all 
insured parties, thus forcing punctual insured parties to subsidize those who 
flout the policy’s notice requirements.
Regardless of 
which side makes the superior public policy argument as to what an insurance 
policy should provide, I would decline to insert nonexistent language 
into the parties’ agreement. The Court is construing a contract, not editing it, 
and just six months ago, in Fortis Benefits v. Cantu, this Court 
unanimously stressed that “contract rights generally arise from contract 
language; they do not derive their validity from principles of equity but 
directly from the parties’ agreement.”[31] Fortis Benefits directs courts in 
contractual interpretation cases to follow a “modest, text-based approach” 
anchored in the parties’ agreed contract,[32] rather than imposing external, 
judge-made rules. Indeed, Fortis Benefits cited Cutaia, which should control today, for the sound 
principle that balancing policy concerns is best left to nonjudicial bodies.[33] The Court affirmed that view last year 
in Fiess when it concluded: “If the political 
branches of Texas government decide that mold 
should be covered in Texas insurance policies, 
they have tools at their disposal to do so; Texas courts must stick to what those policies 
say . . . .”[34] Cutaia’s core holding remains valid. “[O]n balance it 
is better policy for the contracts of insurance to be changed by the public body 
charged with their supervision . . . or by the Legislature, rather than for this 
Court to insert a provision that violations of conditions precedent will be 
excused if no harm results from their violation.”[35]
In a 
post-submission brief, Hanover points out that since October 2000 a “Texas 
Changes” endorsement, designated endorsement “CG 01 03” and published by the 
Insurance Services Office (ISO), has included a prejudice requirement for 
personal and advertising injury claims as well as bodily injury and property 
damage claims. Hanover alternatively describes this 
endorsement as “approved” or “required” by TDI. Under current and prior law, TDI 
has been authorized to approve standardized policy forms.[36] The ISO is “a national organization that 
publishes standard policy forms.”[37] The record and briefing before us are 
inconclusive as to whether TDI has merely approved the use of this endorsement 
as one which may be used in Texas CGL policies or has in effect required 
the use of the endorsement in all CGL policies by approving this form or 
otherwise mandating its use through some other mechanism. Even if TDI now 
mandates a prejudice requirement for advertising injury claims in all Texas CGL 
policies, that requirement, as Hanover notes, was not imposed until some time 
in 2000 at the earliest and does not apply to the policy in the pending case. 
The parties stipulated that the Hanover policies covered the period from July 
1993 through June 1999. It is undisputed that the ISO endorsement used in the 
Hanover policy 
in issue did not contain a prejudice requirement for advertising injury claims. 
For the reasons described above, I would not impose a prejudice requirement 
where the policy contains no such language and where TDI did not require such an 
endorsement at the time the policy was in effect—even if TDI has since changed 
the endorsement language that must be used.
Today the 
Court treats Cutaia as a dead letter, overruled 
by Hernandez, reasoning that the Court in Hernandez declined to 
draw any distinction between covenants and conditions and “apparently rejected” 
Cutaia’s holding that failure to comply with a 
coverage condition precluded liability irrespective of harm.[38] I disagree. This Court has never 
expressly equated covenants with conditions or abolished the sometimes fine (but 
sometimes significant) distinction between them; Texas law has traditionally viewed covenants 
and conditions differently. Hernandez may not have classified the 
settlement-without-consent exclusion in that case as one or the other, but other 
post–Hernandez decisions from this Court have certainly done so. Indeed, 
just one year after Hernandez, in Harwell, we retained the 
distinction, deeming the prompt-notice requirement in that case a condition 
precedent and not a covenant.[39]
Put simply, 
Hernandez concerned a policy exclusion—not a 
policy condition—and this Court has restated the distinction repeatedly since 
Hernandez was decided.[40] In any event, Hernandez did not 
overrule or modify Cutaia, expressly or by 
implication; the Hernandez majority never even mentions Cutaia. Nor has any subsequent case from this Court, 
until today, limited Cutaia or remotely 
criticized it. For the reasons discussed above,[41] Cutaia 
and Hernandez can be reconciled, with today’s notice case falling 
squarely under Cutaia, a case this Court 
recently cited and unanimously reaffirmed for the core teaching regarding policy 
intervention/abstention.[42]
The Court 
finds my reading of the policy unreasonable because “identical policy language 
creates a condition precedent as to one type of coverage (advertising injury), 
but a covenant as to the other (bodily injury and property damage).”[43] I think my reading of the policy is 
exactly what is expected when a national insurance company uses a standard CGL 
form but modifies it only to the extent necessary to comply with the law of the 
jurisdiction where the policy is sold, in this case Texas. The policy generally 
provides that notice of an occurrence or claim is a condition precedent to 
coverage and that “[n]o person . . . has a right . . . [t]o sue” the insurer 
absent compliance with this requirement, as discussed more fully above, but 
modifies these standard provisions as needed to comply with Texas law. Hence, 
the policy includes an endorsement, titled “Texas Changes—Conditions Requiring 
Notice” and providing that prejudice must be shown to deny coverage “[w]ith regard to Bodily Injury and Property Damage Liability” 
only. The absence of a similar endorsement for advertising injury claims is 
unsurprising since Texas law did not require such an endorsement. 
I see nothing odd or abhorrent in allowing an insurer to sell a policy using a 
nationally standardized form that is modified only to the extent necessary to 
comply with a unique Texas requirement.
Finally, the 
Court views my approach as imposing “draconian consequences for even de minimis deviations from the duties the policy places on 
insureds.”[44] In this case, PAJ’s failure to comply with the policy’s prompt-notice 
requirements cannot be described as de minimis. 
The record shows that several months passed before PAJ notified Hanover of the lawsuit, 
notification that PAJ admits was not “as soon as practicable.” PAJ was not 
merely facing an “occurrence” or a potential claim under the policy; it had 
actually been sued. I do not intend to suggest that even the most trivial 
missteps in complying with notice or other policy requirements will justify 
total forfeiture of coverage. Texas law, for example, has long recognized 
that “substantial compliance” with a policy’s notice or proof-of-loss provisions 
will suffice and that trivial missteps in complying with notice or other policy 
requirements are excused.[45] I would leave intact the “substantial 
compliance” doctrine as to an insured’s myriad policy obligations, but there was 
no “substantial compliance” here. Our sole focus today should be whether to 
judicially engraft a prejudice requirement where none exists in the wording of 
the policy or in Texas law, and I 
would decline to do so.
II. Conclusion
Courts should 
enforce unambiguous policy terms in accordance with their plain meaning.[46] As this Court recently affirmed in Fiess, we cannot fashion for parties a 
new-and-improved contract, “nor change that which they have made under the guise 
of construction,”[47] nor impose by judicial fiat a brand of 
justice, however earnest and strongly felt, that we find more personally 
congenial. The “better policy” remains that insurance 
contracts should be construed by courts and spruced up, if necessary, by nonjudicial bodies.[48] Accordingly, I would decline to 
embellish this policy’s unequivocal notice-of-suit and “no action” restrictions 
by imposing an extra-contractual prejudice requirement that excuses the failure 
of a condition precedent to coverage.[49] I would affirm the court of appeals’ 
judgment that Hanover is not bound to defend or indemnify 
PAJ in the copyright infringement suit.
 
____________________________________
Don R. Willett
Justice
 
Opinion delivered: January 11, 2008
 









[1] 
476 S.W.2d 278, 279 (Tex. 1972).

[2] 
Id. at 
281.

[3] 
875 S.W.2d 691 (Tex. 1994).

[4] 
896 S.W.2d 170 (Tex. 1995).

[5] 
Klein v. Century Lloyds, 275 S.W.2d 95, 96 (Tex. 1955).

[6] 
See Hernandez, 875 S.W.2d at 
692.

[7] 
Harwell, 896 S.W.2d at 173–74; Liberty Mut. Ins. Co. v. Cruz, 883 S.W.2d 164, 165 (Tex. 1993); Weaver v. Hartford Accident & 
Indem. Co., 570 S.W.2d 367, 369 (Tex. 1978); Dairyland County Mut. Ins. Co. v. Roman, 498 S.W.2d 154, 157 (Tex. 1973); Cutaia, 476 S.W.2d at 278; 
Klein, 275 S.W.2d at 
96.

[8] 
Cutaia, 476 S.W.2d at 279, 281 (discussing 
New Amsterdam Cas. Co. v. Hamblen, 190 S.W.2d 
56 (Tex. 
1945)); see also Klein, 275 S.W.2d at 96. 

[9] 
Cutaia, 476 S.W.2d at 
278.

[10] Hohenberg Bros. Co. v. George E. Gibbons & 
Co., 537 S.W.2d 1, 3 (Tex. 1976).

[11] Id.

[12] See, e.g., Cutaia, 476 S.W.2d at 279.

[13] Landscape Design & Constr., Inc. v. 
Harold Thomas Excavating, Inc., 604 S.W.2d 374, 376 (Tex. App.—Dallas 1980, 
writ ref’d n.r.e.); see 
also Reinert v. Lawson, 113 S.W.2d 
293, 295 (Tex. Civ. App.—Waco 1938, no writ).

[14] Hernandez v. Gulf Group Lloyds, 875 
S.W.2d 691, 692–93 (Tex. 1994).

[15] Criswell v. European Crossroads Shopping 
Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990); see also Hohenberg Bros., 537 S.W.2d at 3.

[16] Hohenberg Bros., 537 S.W.2d 
at 3.

[17] 875 S.W.2d at 692 
n.1.

[18] Id. at 692–93.

[19] Id. at 692.

[20] See id.

[21] See supra note 7 and accompanying 
text.

[22] 170 S.W.3d at 
263.

[23] Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 
1995).

[24] Id. 
at 174 (citing Liberty Mut. Ins. Co. v. Cruz, 883 S.W.2d 164, 165 (Tex. 
1993)). Cruz, like Hernandez, involved an insurance 
policy with a notice provision that required a showing of prejudice before the 
insurer could escape coverage. The policy in Cruz stated: “unless the 
company is prejudiced by the insured’s failure to comply with the 
requirement, any provision of this policy requiring the insured to give notice . 
. . shall not bar liability under this policy.” 883 S.W.2d at 
165–66 n.3.

[25] Members Mut. 
Ins. Co. v. Cutaia, 476 S.W.2d 278, 281 (Tex. 
1972).

[26] State Bd. of Ins., Revision of Texas 
Standard Provision for Automobile Policies Editions of April 1, 1955 and October 
1, 1966—Amendatory Endorsement—Notice, Order No. 22582 (Jan. 26, 1973), 
available at http://www.tdi.state.tx.us/commercial/pcck22582.html; State 
Bd. of Ins., Revision of Texas Standard Provision for General Liability 
Policies—Amendatory Endorsement-Notice, Order No. 23080 (Mar. 13, 1973), 
available at 
http://www.tdi.state.tx.us/commercial/pcck23080.html.

[27] CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc., 734 
S.W.2d 653, 655 (Tex. 1987).

[28] 202 S.W.3d 744 (Tex. 2006).

[29] Id. at 749–50.

[30] Id. at 750.

[31] 234 S.W.3d 642, 647 (Tex. 2007).

[32] Id. at 649.

[33] Id. at 649–50.

[34] Fiess, 
202 S.W.3d at 753.

[35] Members Mut. 
Ins. Co. v. Cutaia, 476 S.W.2d 278, 281 (Tex. 
1972).

[36] Under current law, an insurer offering a 
CGL policy must use forms filed with and approved by TDI, Tex. Ins. Code §§ 2301.003(b)(3), 2301.006, subject to an exemption for certain large 
risks, § 2301.004. TDI “may adopt standard insurance policy forms . . . that an 
insurer may use instead of the insurer’s own forms.” § 2301.008. “The 
Commissioner may approve the use of policy forms and endorsements adopted by a 
national organization of insurance companies or a similar organization, if such 
forms or endorsements are filed with and are approved by the commissioner in 
accordance with this article.” Tex. 
Ins. Code art. 5.35(c) 
(Vernon Supp. 
1997). Similarly, under prior law applicable to CGL policies, insurers 
were required to file and obtain approval of policy forms with TDI, which was 
also authorized to “promulgate standard insurance policy forms.” See 
id. art. 5.13-2, §§ 2(a)(1), 8(a), 8(e), repealed by Act 
of May 24, 2005, 79th Leg., R.S., ch. 727, § 18(d), 
2005 Tex. Gen. Laws 1752, 2186–87. 

[37] Progressive 
County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 558 (Tex. 2003) (Phillips, 
C.J., dissenting).

[38] ___ S.W.3d at ___.

[39] Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173–74 (Tex. 1995) (“Compliance 
with the notice of suit provision is a ‘condition precedent to the insurer’s 
liability on the policy.’” (quoting Weaver v. 
Hartford 
Accident & Indem. Co., 570 S.W.2d 367, 369 (Tex. 
1978))). Another of our post-Hernandez insurance cases 
retained the distinction, labeling a policy provision a condition precedent and 
concluding “because [the insured] did not comply with all conditions precedent 
to recover under the insurance policy,” he was not entitled to sue or recover on 
the contract. State Farm Lloyds Ins. Co. v. Maldonado, 
963 S.W.2d 38, 41 (Tex. 1998). Maldonado did not 
reach the issue of prejudice, but its reaffirmation that an insured’s failure to 
comply with a condition precedent barred recovery undercuts the application of 
Hernandez to conditions precedent.

[40] In Maldonado, 963 S.W.2d at 40, and 
Harwell, 896 S.W.2d at 173-74, we characterized insurance policy 
provisions as conditions precedent.

[41] See supra Part I.A.

[42] Fortis Benefits v. Cantu, 234 S.W.3d 
642, 649–50 (Tex. 2007).

[43] ___ S.W.3d at ___.

[44] ___ S.W.3d at ___.

[45] See Bituminous Cas. Corp. v. Vacuum Tanks, Inc., 75 F.3d 1048, 
1056 (5th Cir. 1996) (stating that “this court and Texas courts have held that 
substantial compliance with an insurance policy notice requirement will 
suffice,” and holding that failure to forward suit papers as required in policy 
was excused where insured “substantially complied with the notice requirement by 
apprising [the insurer] in writing of the essential allegations of the 
underlying suits”); Bekins Moving & 
Storage Co. v. Williams, 947 S.W.2d 568, 576 n.1 (Tex. App.—Texarkana 1997, 
no writ) (recognizing that “proof of loss and notice of claim are conditions 
precedent to recovery on the policy,” but that “a claimant may still recover 
upon jury findings supporting theories of waiver or substantial compliance”); 
Henry v. Aetna Cas. & Sur. 
Co., 633 S.W.2d 583, 584-85 (Tex. 
App.—Texarkana 1982, writ ref’d n.r.e.) (holding that failure to comply 
with written proof of claim requirement was excused because insured 
substantially complied with requirement when he had his mother report 
particulars of accident to insurance agent, who prepared written report on 
insurer’s own form); Dairyland County Mut. Ins. Co. v. Keys, 568 S.W.2d 457, 458-59 (Tex. Civ. App.—Tyler 1978, 
writ ref’d n.r.e.) (holding, where insurer complained 
that insured “failed to give the proper notice of proof of loss in accordance 
with the terms of the policy,” that insured substantially complied with policy 
when he went to agent’s office and filled out a form providing particulars of 
loss); Austin Bldg. Co. v. Nat’l Union Fire Ins. Co., 403 S.W.2d 499, 
505-06 (Tex. Civ. App.—Dallas 1966, writ ref’d n.r.e.) (holding that insured substantially complied with 
policy requirement that it provide sworn proof of claim, where insured provided 
unsworn proof of claim to insurer’s agent and communicated with adjuster 
regarding particulars of loss); Home Ins. Co. v. F.C. Flewellen Produce Co., 247 S.W. 833, 835-836 (Tex. Comm’n App. 1923, holding approved) (holding that failure to 
produce one inventory record did not violate policy requiring preservation and 
production of business records, where insured produced all other records and was 
not culpable for loss of the missing record); see also Gladding v. Prudential 
Ins. Co. of Am., 521 S.W.2d 736, 737, 739 (Tex. Civ. App.—Houston [1st 
Dist.] 1975, writ ref’d n.r.e.) (holding that insured 
substantially complied with policy change of beneficiary provision by submitting 
an insurance form referring to designees by initials rather than full names as 
required by the form).

[46] Blaycock v. Am. Guarantee Bank Liab. Ins. Co., 632 S.W.2d 719, 721 (Tex. 
1982).

[47] Fiess 
v. State Farm Lloyds, 202 S.W.3d 744, 753 (Tex. 2006)(internal quotation 
marks omitted) (quoting E. Tex. Fire Ins. Co. v. Kempner, 27 S.W. 122, 
122 (Tex. 
1894)).

[48] Members Mut. 
Ins. Co. v. Cutaia, 476 S.W.2d 278, 281 (Tex. 
1972).

[49] Texas courts are not alone in adopting the 
traditional rule and concluding that (1) notice requirements are conditions 
precedent, see Greycoat, 657 A.2d at 768; Livorsi Marine, 856 N.E.2d at 343; Las 
Vegas Star Taxi, 714 P.2d at 562; Argo, 827 N.E.2d at 764; 
Goodyear Tire & Rubber Co. v. Aetna Cas. & 
Sur. Co., 769 N.E.2d 835, 842 (Ohio 2002); Walton, 423 S.E.2d at 
192; Colonial Ins. Co. v. Barrett, 542 S.E.2d 869, 874 (W. Va. 2000); 
Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co., 721 N.E.2d 270, 277 
(Ind. Ct. App. 1999), (2) the modern CGL “no action” language renders the notice 
requirement a condition of coverage that must be honored before the insurer is 
liable, see AIG Centennial Ins. Co. v. Fraley–Landers, 450 F.3d 761, 
764-65, 767 (8th Cir. 2006) (citing a prior case reviewing Arkansas law and so 
holding); Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. 
Co., 714 P.2d 562, 562–63 (Nev. 1986); Federated Mut. Ins. Co. v. Ownbey Enters., 
Inc., 627 S.E.2d 917, 919 & n.2 (Ga. Ct. App. 2006), and (3) the insurer 
need not show prejudice in order to avoid coverage, see AIG, 450 
F.3d at 768 (applying Arkansas law and concluding that although there are some 
divergent cases, Arkansas courts would not impose a prejudice requirement); 
Greycoat Hanover F St. Ltd. P’ship v. Liberty Mut. Ins. 
Co., 657 A.2d 764, 768 n.3 (D.C. 1995); Country 
Mut. Ins. Co. v. Livorsi Marine, Inc., 856 
N.E.2d 338, 346 (Ill. 2006); Argo Corp. v. Greater N.Y. 
Mut. Ins. Co., 827 N.E.2d 762, 764 (N.Y. 
2005); State Farm Fire & Cas. Co. v. Walton, 423 S.E.2d 188, 192 (Va. 
1992).
                
    Maryland holds otherwise; a court has held 
that notice provisions are covenants rather than conditions precedent. See Sherwood Brands, Inc. v. Hartford Accident & Indem. Co., 698 A.2d 1078, 1082 (Md. 1997). 
Notably, however, Maryland has a specific statute that requires 
proof of prejudice, Md. Code Ann., 
Insurance § 19-110 (West 1997), something the Texas Legislature has never 
imposed and something TDI has expressly mandated only for property damage and 
bodily injury claims, see State Bd. of Ins., supra note 26. 

                
    Likewise, leading legal commentators recognize that 
notice provisions have been treated as conditions precedent rather than 
covenants. See 22 Eric Mills 
Holmes, Appleman on Insurance § 139.1[B] (2d ed. 2003); Donald S. Malecki & Arthur L. Flitner, 
Commercial General Liability 76–77 (4th ed. 1992); 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance §§ 190.20, 190.25 
(3d ed. 1999).